PARK DISTRIBUTING COMPANY, Appellant, v. THE DELA-WARE LIQUOR COMMISSION, Appellee.

8

(*July* 3, 1947.)

TERRY and PEARSON, J. J., sitting.

*William S. Potter* and *Vincent A. Theisen* (of the firm of Southerland, Berl and Potter) for appellant.

*James R. Morford* for appellee.

Court of General Sessions for New Castle County, No. 9, March Term, 1946.

PEARSON, J., delivering the opinion of the court:

By this appeal, the Commission's refusal to grant Park a license to import and sell liquor is assailed as founded on errors of law and as unsupported by the evidence. Park's application for the license was filed with the Commission in April 1946. The Commission concedes that it then found that the application was in proper form and in compliance with the requirements of Section 15 of the *Liquor Control Act, Rev. Code of Del.* 1935, *Sec.* 6144, relating to applicants for licenses to import liquor into Delaware; that Park was "a proper entity to receive this license, if otherwise permissible"; and that the location where Park proposed to operate was satisfactory. There was no protest against the issuance of the license, and no hearing was held upon the application; but four days after it was filed, the Commission wrote Park that it was "refused for the following reason: The Commission has reasonable ground to believe that there are sufficient licensed Importers of alcoholic liquor in the State of Delaware and, by reason of that fact, the granting of the license applied for is not demanded by public interest or convenience."

Less than a week later, Park filed a notice of appeal in the Court of General Sessions. The appeal came on for hearing (before Pearson, J.) and evidence was introduced on behalf of Park. From this, it appears that there are now five licensed importers in Delaware, one of which first acquired a license in the early part of 1946. There was testimony that each of the importers, except this last, sup-

plies a number of lines or brands of liquors which are so comparable as to be competitive among themselves if handled by different importers; that some distillers or rectifiers not now selling their lines to importers in Delaware, objected to dealing with the present importers who already have similar lines. There was also testimony that representatives of Park had negotiated with representatives of several distillers or rectifiers and that at least one had agreed to supply Park with its lines, and that it appeared probable that others would do so, although there were no contracts or binding commitments, and the other distillers were reluctant "to put it in writing" since Park had no license as an importer. Under a stipulation of both parties, the record was remanded to the Commission for further hearing. Such a hearing was held and the testimony of applicant's witnesses was, generally speaking, similar in import to the testimony previously offered before the court. The chief inspector of the Commission and two representatives of presently licensed importers were called to testify by the Commission. The purpose of calling them was apparently to show that the business of the present importers is competitive and that there is no necessity for an additional importer. Shortly after the hearing, the Commission filed findings of fact, a decision, and statements of reasons for the decision which read thus:

"1. The application is in proper form. Applicant has complied with all procedural requirements of the Delaware Liquor Control Act relating to applications for licenses and is qualified to receive a license as an Importer of Alcoholic Liquor under the Delaware Liquor Control Act, if the license applied for should otherwise be granted.

"2. The retail licensees of alcoholic liquor in the State of Delaware and through such retail licensees, the consuming public are being adequately, properly and efficiently

served, supplied and serviced by Importers of Alcoholic Liquors presently licensed by the Commission; that the businesses of the existing licensed Importers is competitive; that there is no evidence or complaint of monopoly or of any combination or agreement to control prices; and that the consuming public is protected by existing competition between licensed Importers and between retail licensees handling the several competing lines of alcoholic liquors of the several classes, from unfair and unjustified price increases.

"3. Public interest requires a limited number of Licensed Importers of Alcoholic Liquor and there are a sufficient number of such licensed Importers in the State of Delaware, to serve, supply and service all retail licensees in every part of the state.

"4. Pursuant to stipulation, the Commission accorded applicant a full hearing on Friday, July 26, 1946 at the office of the Commission's Attorney, 212 Delaware Trust Building, Wilmington, Delaware, of which hearing the applicant had due and timely notice and at which hearing the applicant appeared by its head officers and by counsel and presented evidence in support of its application. A complete transcript of the evidence at said hearing is appended hereto.

"5. At the hearing last mentioned, the applicant represented to the Commission that it had available to it, if licensed, sources of supply of alcoholic liquor for which there was no existing Delaware outlet, through any of the existing licensed Importers, viz:

"The Fleischmann Distilling Corporation for their whiskey lines, Gooderham & Worts, Ltd., for their 'William Penn' whiskey, Union Distillers Products Company for their 'Maryland Futurity' whiskey, Munson G. Shaw Company

for their 'Old Rarity' Scotch whiskey and champagne lines, Philip Blum & Company, Inc., for their blended and bourbon whiskey lines including 'Fifty Grand' and 'James B. Beam' whiskeys.

"6. Following said hearing, the Commission sent the following telegrams to each of said supposedly available sources of supply, as represented by applicant: " 'To the Fleischmann Distilling Corporation

" 'Representations made at hearing today before Delaware Liquor Commission by Park Distributing Company, applicant for Delaware license as Importer of Alcoholic Liquor, were to effect that you would supply applicant with adequate quantities of your whiskeys not presently being imported into and sold in Delaware, if license is granted as applied for. Please advise by return wire collect whether fact represented is true and specifically what quantities your products you can assure for delivery to this applicant, as a licensed Importer, if the license applied for be granted, for each of the months August 1946 through June 1947.' [Then follow copies of telegrams in similar language, to each of the four firms, Gooderham & Worts, Ltd., Munson G. Shaw Company, Philip Blum & Company, Inc. and Union Distillers Products Company.]

"7. The Commission has received replies to its said telegrams as follows:

"From the Fleischmann Distilling Corporation

"Telegram dated July 29, 1946 as follows:

" 'Reference your telegram July 26th. No commitments of any nature have been made to Park Distributing Company. Suggest subject company may have referred to E. M. Fleischmann Company.'

"From Munson G. Shaw Company

"A telephone message in substance as follows on July 29, 1946:

"Have no recollection of any promise to give Park Distributors a line for sale in Delaware. Know Paul Cramer, but only as an individual. Do not, at this time know what their representative in this territory may have said.

"From Gooderham and Worts, Ltd.

"Telegram dated July 30, 1946 as follows:

" 'Re telegram distribution our products in Delaware we are not considering at this time the appointment of any wholesaler or prospective wholesaler to handle our products in your state. No promises have been made to anyone and this decision will continue until additional whiskey supplies are made available to our company.'

"From Philip Blum & Company, Inc.

"Telegram dated July 30, 1946 as follows:

" 'Re telegram 26th regarding applicant Park Distributing Company will be willing to supply following approximate quantities of assorted merchandise 1 car cordials 3 cars whiskey 3 cars gin 5 cars wine 1 car specialties for total period mentioned in your wire subject to our ability to deliver.'

"From Union Distillers Products Company

"Telegram dated August 2, 1946 as follows:

" 'Executive partner this company away on vacation we await his return to reply to your wire re Park Distributors.'

"The Commission has ascertained that E. M. Fleischmann Company, referred to in the foregoing telegram from the Fleischmann Distilling Corporation, is no longer in existence.

"8. Applicant has presented no competent evidence of the probable availability of adequate sources of supply of alcoholic liquors for importation into the State of Delaware which would enable it successfully to conduct the business of a licensed Importer of Alcoholic Liquor in the State of Delaware. It is in the public interest that there be a reasonable expectation of the probable successful operation of the business of all licensed Importers.

"9. The granting of the license applied for is not demanded by public interest or convenience.

"Decision

"The decision of the Commission is that the application of Park Distributing Company for a license as an Importer of Alcoholic Liquor be not granted.

"Statement of the Reasons for
the Decision of the Commission

"The Commission, by this reference thereto, incorporates in this statement, the several findings of fact above set forth. Specifically, the Commission bases its decision upon the following:

"(a) The Commission has reasonable ground to believe and does believe that there are a sufficient number of licensed Importers of Alcoholic Liquor in the State of Delaware.

"(b) The Commission has reasonable ground to believe and does believe that the granting of the license applied for is not demanded by public interest or convenience."

The original appeal then came on for further hearing before this court (Terry and Pearson, JJ., sitting) upon the entire record. Over the objection of the Commission's attorney, Park called the Delaware Liquor Commissioner as

a witness. He testified with respect to the telegrams referred to in the findings, and also with respect to statements made to him by representatives of Munson G. Shaw Company and Fleischmann Distilling Corporation, subsequent to the filing of the Commission's findings and decision quoted above, to the effect that if another importer were licensed in Delaware, these companies would sell their products to such new importer. He further testified with respect to supplies of liquor available and particular brands. Park's attorney made an offer of proof of the balance sheets as of December 1945 and 1945 earning statements of the five licensed importers. The Commission's objection to this line of proof was sustained. The Commission then called as a witness a representative of one of the licensed importers who testified with respect to certain brands of liquor and the demand in Delaware for such brands.

Section 22 of the *Liquor Control Act, Rev. Code*, § 6151, as amended by 45 *Laws of Del.* c. 262, p. 982, provides thus:

"Sec. 22. May Refuse License:—The Commission may refuse to license any applicant if it has reasonable ground to believe:

"(1) That there are sufficient licensed premises in the locality or that the granting of a license in the locality set out in the application is not demanded by public interest or convenience.

"(2) That the applicant has not furnished an acceptable bond.

"(3) That the applicant appears to be financially irresponsible or neglects to provide for his family or neglects, or is unable, to pay his debts.

"(4) That the applicant has been provided with funds by or has any forbidden connection with a manufacturer of alcoholic liquor.

"(5) That the applicant is in the habit of using alcoholic beverages to excess, or has been arrested for drunkenness or for driving a motor vehicle while under the influence of intoxicating liquor.

"(6) That the applicant had made false statements to the Commission.

"(7) That the applicant has been convicted, of violating any of the liquor laws of this State, or has at any time been convicted and imprisoned for a crime or misdemeanor.

"(8) That the applicant has maintained a noisy, lewd, disorderly or unsanitary establishment.

"(9) That there is any other reason which in the opinion of the Commission based on public convenience or necessity warrants its refusal to grant such license.

"The Commission's decision refusing an application for a license shall be final and conclusive unless within ten days after notice of refusal the applicant shall appeal to the Court of General Sessions of the County in which the license, if granted, would operate. The procedure on such appeal shall be as provided in *Section* 21 of this *Chapter,* as amended by *Chapter* 275, *Volume* 43, *Laws of Delaware,* being 6150 *Sec.* 21 of the *Revised Code of Delaware,* 1935."

Section 21 of the Act, *Rev. Code* 1935, § 6150, 43 *Laws of Del.* c. 275, § 2, p. 1129, referred to in the last paragraph of Section 22, reads as follows:

"Sec. 21. General Provisions in Regard to Licenses:— The Commission shall examine all applications for license as promptly as possible, and if it shall appear that any application should not be granted, the Commission shall so notify the applicant, stating the cause for refusal, and returning the amount paid by the applicant.

"If the Commission has determined to grant an application, but before the issuance of the license applied for and within ten days of the filing of said application, a protest against the issuance of said license, signed by at least ten residents of the neighborhood where the license is to operate, has been filed with the Commission, then a hearing shall be held to consider said application and protest, of which hearing ten days' notice, together with a recital of the protest, shall be sent by registered mail to the address of the applicant, and a notice of the time of the hearing shall be sent to each of the persons who signed the protest; such hearings shall be conducted by the Commission and a record of such hearing shall be made and kept by the Commission. The said record shall include the evidence, the Commission's findings of fact and the Commission's decision, together with a brief statement of the reasons therefor. It shall show the manner in which the Commission construed the law and applied it to the facts. The Commission's decision shall be final and conclusive unless within ten days after notice thereof the parties to such hearing shall appeal to the Court of General Sessions of the county in which the license would operate. In every such appeal the cause shall be decided by the Court from the record, without the aid of a jury; and the Court may affirm, reverse or modify the Commission's decision. The Commission's findings of fact shall not be set aside unless the Court shall determine that the record contains no substantial evidence that would reasonably support the said findings. If the Court finds that additional evidence should be taken, the Court may, in its discretion, take the additional evidence or remand the cause to the Commission for completion of the record. If the Court finds that the Commission has made an error of law, the Court shall reverse or modify the Commission's decision and render an appropriate judgment."

The Commission asserts that its refusal of the license "is bottomed on paragraphs (1) and (9) of Section 22". Park challenges the action of the Commission on various grounds which may be summarized as follows:

1. Section 22 (1) of the Liquor Control Act is unconstitutional.

2. The Commission may not properly enlarge the scope of its discretion, under the act, by requiring an applicant to furnish competent proof that it would have sufficient supplies of alcoholic liquors available to assure its financial success if licensed.

3. The Commission's findings of fact do not afford a reasonable basis for its decision.

4. There is no substantial evidence in the record to sustain the findings of the Commission.

5. From an examination of the record, it does not appear that the Commission's decision was based upon the exercise of a sound judicial discretion.

From the record, briefs and argument, it seems to us apparent that the Commission arrived at its decision through a fundamental misconception of its authority in connection with the granting of licenses. The Commission does not have an arbitrary power to grant or refuse a license application, or an unrestricted discretion in deciding whether the facts of a particular case fall within the statutory conditions upon which the grant or refusal of a license depends. *Lord v. Delaware Liquor Comm.* (first opinion) 1 *Terry* 436, 13 A. 2d 436; (second opinion) 2 *Terry.* 154, 17 A. 2d 230. Under Section 21 of the Act, the Commission must keep a record of hearings before it, which must include, among other things, findings of fact and reasons for the decision, and show "the manner in which the Commis-

sion construed the law and applied it to the facts." The Commission is not empowered to reject an application unless the applicant has failed to comply with *statutory* requirements or unless the Commission *has reasonable ground to believe* that a *statutory* ground of refusal exists. Compare: *Lord v. Delaware Liquor Comm.* (second opinion) supra. Although at some places in the Commission's briefs, acknowledgement is made of the limitations upon its power and discretion, elsewhere it frankly disavows them in large measure. For example, in the Commission's supplemental memorandum, it argues:

"Finally, we desire to underline and to supplement the argument made at pp. 23, 24 of the principal brief to the effect that Delaware is a 'quasi-monopoly' state in that only the Commission and its authorized agents may import and sell for resale. Let us look once more at *Sec.* 16 (4) [*Rev. Code* 1935, § 6145 (4)]:

" 'The Commission shall "sell" and deliver all "alcoholic liquor" purchased, by holders of license under this Chapter for the purpose of reselling or of dispensing such "alcoholic liquor," unless otherwise provided herein, and shall "sell" and deliver all "alcoholic liquor" purchased by holders of license to purchase such "alcoholic liquor" for stock, as provided in Section 17, paragraph 1 of this Chapter, but the Commission may authorize holders of license to order or purchase "alcoholic liquor" through the Commission from a "manufacturer" or an "importer" in the manner to be set forth in the rules and regulations of the Commission.'

"In other words the retail licensees and holders of personal licenses for stock 'purchase "alcoholic liquor" *through the Commission* from * * * an "importer" in the manner to be set forth in the rules and regulations of the Commis-

sion'. Rule 57 of the Commission, in pursuance of the above statutory authority, provides:

" 'Any holder of a license to sell spirits, wine and/or beer at retail may purchase such beverages from any importer licensed to sell and deliver the same.'

"Rule 94, as above pointed out, goes even further and authorizes direct sale and deliveries by importers to holders of personal licenses by the case lot, and to the general public by the bottle.

"These licensed importers are therefore in a very real sense, agents of the Commission. Their very existence is dependent upon the continuance of Rule 57 or something substantially equivalent. The agency of all importers may be terminated by the stroke of a pen through the repeal of the applicable Rules. In this situation, it is submitted, the Commission should have as unrestricted discretion in the choice of its agents who are to perform the function of selling and delivering alcoholic liquors purchased by licensees for resale (Sec. 16(4)) as the Commission has in the choice of its other agents,—its attorney, its inspectors, its executive secretary.

"By its decision in this case, the Commission has said that it does not desire the appellant as its agent,—that it does not desire to delegate to Park Distributing Company this important part of the power of government which the legislature has entrusted to the Commission and which the legislature has authorized the Commission, in its discretion, to re-delegate to importers."

██ ██ As to the suggestion that the Commission has as "unrestricted discretion" in rejecting an applicant for an importer's license as it has in the choice of its attorney, inspectors, executive secretary and other agents, we not only find no support for this in the statutes, but we think

it basically contrary to the principle of limited power and discretion stated above. To predicate the refusal of a license on an assumption of "unrestricted discretion" and on the fact that the Commission "does not desire the appellant as its agent" is an error of law. Such a ground of refusal is arbitrary: it is not confined to legally relevant considerations but is subject to personal predilection and whim. Likewise, the mere statement or finding by the Commission that a statutory ground of refusal exists is insufficient, upon challenge on appeal, unless supported by some reasonable basis of facts appearing in the record. The statutes make this manifest; and it would seem an indispensable safeguard against arbitrary action.

The Commission's misapprehension of these rules is nowhere more evident than in connection with Finding 3. As we understand the argument in support of this finding, it is that *if* there were more importers than could carry on business at a profit in given conditions of supply and demand, the importers might likely resort to devices to create an artificial demand for liquor and an increase in the consumption of liquor, which would be opposed to a public policy to promote temperance and moderation; and the Commission's policing costs would be increased to prevent business short cuts and violations of law. Continuing, the Commission argues, in effect, that since there *could be* too many importers, the Commission may fix *any number* it sees fit as the maximum to be licensed. Such a power would be arbitrary. Any power to refuse a license because of the existing number of importers must depend upon facts showing conditions which reasonably justify the refusal. It is not enough that the Commission is apprehensive of ill results from hypothetical situations. There must be pointed out a reasonably direct relation between a demonstrated factual situation and a plain interest of the public.

■ Here, we have no showing that the dangers which the Commission fears are threatened. There is no indication of the volume of business of the present importers, or of impending operation at a loss, or of other facts which together might reasonably support an inference concerning the situation.

■ In a brief filed before the argument, it was said:

"The court should take cognizance of the important matter of public policy involved in this case. To a very large extent, in the opinion of the Commission, the saturation point has been reached, beyond which not only is there no public interest to be served in the granting of additional licenses, but a very definite *disservice* to the people of the State could result from the granting of any considerable number of the great flood of applications of all classes presently being received by the Commission."

Upon inquiry at the argument, the court was advised that Park's application for an importer's license was the only one of that class received during 1946, the year Park's application was filed. There is also a statement in the Commission's supplemental brief, dated April 28, 1947, that no other such application had been filed up to that date. This single application for an importer's license during the period mentioned does not establish a threatened danger or anything else which would justify a limitation of the maximum number of licensees to five.

■ The Commission apparently relies on Finding 2 as a basis for its conclusion that there are now a sufficient number of importers in Delaware to serve all retail licensees. Whether retailers and the public are being adequately served, whether the business of existing imports is competitive, and whether the public is protected from unfair and unjustified price increases are high order inferences from (among other things) courses of conduct followed, business

methods employed, and ultimately, multitudinous individual transactions undertaken in the liquor business during a period of time. The significance and value attributable to statements of such inferences largely depends upon the facts upon which they are based, the extent to which the total available relevant facts have been investigated, and the apparent probability that the facts investigated are typical of all the relevant facts. Here the Commission's inferences in Finding 2 are based principally on the testimony of its chief inspector and of three representatives of licensed importers. Such testimony is for the most part in the form of opinions of the witnesses. It does not appear that their opinions were founded on anything remotely resembling a survey of conditions existing in the business. There is no evidence of any particular transactions, or series of transactions, or of price ranges, or comparisons of price ranges at various times, or with prices in other places.

Referring to lists of the lines of liquor distributed by the present importers, Park's attorney questioned the Commissioner at the first court hearing, and he answered, as follows:

"Q. * * * From these lists which you say you are somewhat familiar with, is it not obvious that each one of these houses, with the exception of State Distributors, is top-heavy with competitive lines? A. I wouldn't say anything about that.

"Q. Why wouldn't you? A. Because that is their business, and not mine.

"Q. In other words, you don't have an opinion on that? A. All I know is that, in these lists, practically all of the nationally known and nationally advertised and nationally desired whiskies, brandies and wines are now coming into this State."

From the Commissioner's testimony, it may be assumed that no investigation was made to determine whether, in fact, the distribution of several lines by a single importer affects competition in the business.

Because of the paucity of supporting facts, we think the inferences of Finding 2 are not entitled to consideration in determining any questions before us in this case.

The Commission urges that its power to fix a maximum number is derived from Section 22(1) of the Act which refers to "sufficient licensed premises in the locality" and "the locality set out in the application", since, it is argued, the word "locality" should be construed to mean the entire state of Delaware in the case of an applicant for an importer's license. Even if this be accepted, what we have said above would be applicable. But in our view, the word "locality" should be construed in the same sense whether the application is for an importer's or a retailer's license. Consequently, any power to "limit" the number of importers must stem from Section 22(9), which authorizes the Commission to refuse a license if the Commossion has reasonable ground to believe that there is any reason (not stated in the preceding sub-sections) "which in the opinion of the Commission based on public convenience or necessity warrants its refusal to grant" the license. It is, therefore, unnecessary to consider the constitutionality of Section 22(1).

As appears from the briefs and argument, the Commission takes the position that "the burden is upon every applicant to show the public convenience, interest, desire and need which will be served by the granting of his particular application." The following quotation from a brief of the Commission shows that the word "burden" is used in the sense of "burden of proof", as in a civil action:

"On the point of additional supplies of liquor, which this applicant contends it could bring into the state, it is the position of the Commission that the 'proof' offered failed to establish the contention in any event. But even if we were to assume the availability to this applicant of some very substantial supplies of very desirable brands, not presently in the state, we still have not met the test of 'public interest or convenience' or of 'public convenience or necessity', absent some proof by the applicant that the public demands such brands and is being deprived of the opportunity to purchase them."

To impose this "burden" on an applicant is unwarranted by the statutes. Section 22 does not provide steps to be taken by an applicant. It sets forth reasons for a refusal by the Commission (even though an applicant has taken all steps required of him) and each reason for refusal is subject to the express condition that the Commission have reasonable ground to believe that such reason exists in a case under consideration. The burden which the Commission would put on an applicant would require him to negative all of the reasons in the nine sub-sections, as a condition to the granting of a license; and this would permit a refusal merely because of an absence of negativing proof, without regard to the existence of a reasonable ground to believe that any of the reasons for refusal are present. The fallacy of the Commission's position is further demonstrated by the very content of Section 22 (9) which would be almost impossible to negative, as a condition to the granting of a license.

The Commission's insistence upon this erroneous burden rule would seem enough to vitiate Finding 9 that the granting of the license is not demanded by public interest or convenience. But wholly apart from the "burden" rule,

the finding is a conclusion which, in our view, is not supported by any substantial evidence.

 Finding 8 must be set aside. There is no power under the law to refuse a license because an applicant has not demonstrated the probable availability of adequate sources of liquor which would enable it successfully to conduct an importer's business. Sources of supply are only one element contributing to the ultimate success or failure of such a business. The Commission is not charged with the duty of prognosticating success or failure of the business of each applicant; nor may it refuse a license on the ground that the applicant has failed to offer proof of future success. Whether it might refuse if there were substantial evidence to support an inference that under existing conditions there is no reasonable possibility of success, we need not consider, for this is not such a case.

 Findings 5, 6 and 7 may be disposed of briefly. The statement of Park's representation as to sources of supply is inaccurate as phrased. Having no license, Park was, of course, not in a position to contract to buy supplies of liquor. There is testimony that representatives of Park negotiated with representatives of various firms of distillers and rectifiers and that some of these would not put in writing their willingness to supply Park with liquor if a license were granted. Statements in the testimony about availability must be read in their context, and when so read, do not admit of a construction that there were commitments binding the firms mentioned. Rather, the purport of the testimony seems clear that the witnesses concluded from their negotiations that it was highly probable that contracts for supplies of liquor could be obtained if Park received a license.

The telegrams sent by the Commission seem inappropriate to accomplish their apparent purpose of investigation.

Although the evidence showed no binding commitments or written assurances (from most of the firms) the telegrams do not disclose this. They called for replies "by return wire" but did not mention the representatives of Park who said they had negotiated with the firms, nor the representatives of the firms with whom Park claimed to have negotiated. It is unlikely that the telegrams would be interpreted by the recipients as requests to inquire, before replying, of all of their representatives whether any had made a statement to a representative of Park from which the latter might reasonably conclude that the firms would probably supply Park with liquor if Park were licensed. That the Commission's method of inquiry was inept is borne out by the fact that subsequent to its decision, members of two of the firms called on the Commissioner and stated that they were dissatisfied with the situation in Delaware but would supply their products if another importer were licensed. A representative of another firm had testified at the first court hearing that his company would supply liquor to Park. Only one firm, Gooderham and Worts, Ltd., has not either by letter, telegram, or statement of a representative, substantially corroborated the testimony of Park's witnesses of probable availability of liquor. We think the telegrams sent and received fail to contradict the testimony of Park's witnesses.

For the reasons above set forth, the Commission's decision should be reversed.

An order accordingly will be entered.