DELAWARE ALCOHOLIC BEVERAGE WHOLESALERS, INC., a not-for-profit Delaware corporation, Plaintiff Below, Appellant,

v.

Watson K. AYERS, J. Edwin James, Harry Strusowski and Edward J. Troise, Sr., individually and collectively comprising the Delaware Alcoholic Beverage Control Commission, Defendants Below, Appellees.

Supreme Court of Delaware.

Submitted: Sept. 24, 1985.

Decided: Feb. 10, 1986.

Bruce M. Stargatt (argued) and Richard H. Morse of Young, Conaway, Stargatt & Taylor, Wilmington, for appellant.

Robert W. Willard (argued), Dept. of Justice, Wilmington, for appellees.

Before CHRISTIE, C.J., McNEILLY and MOORE, JJ.

MOORE, Justice:

The Delaware Alcoholic Beverage Wholesalers, Inc., a trade association of liquor importers [1] (the Association), appeals a decision of the Superior Court upholding the implementation of a new Rule 37 by the Delaware Alcoholic Beverage Control Commission (the Commission), relating to the financial responsibility of retail licensees.[2] The Association challenges the new rule on the grounds that it violates 4 *Del.C.* § 705,[3] and that it is inconsistent with the regulatory scheme governing the alcoholic liquor industry in Delaware. However, we conclude that the Commission had full authority to promulgate this rule and properly did so. Accordingly, we affirm.

I.

The challenged Rule purports to control the extension of credit by wholesalers to

---

**1.** Under Delaware law the term "importer" denotes a licensed wholesale liquor dealer within this State. See 4 *Del.C.* § 101(19).

**2.** The questioned provisions of new Rule 37 are as follows:

A. *Purpose and Scope.* Since December 31, 1933, financial responsibility has been of vital concern to the Commission. Financial irresponsibility, under the provisions of Title 4, *Delaware Code,* Chapter 5, Section 543(b)(3), is identified as a valid reason for the Commission to refuse a license. Timely payment of industry debts is critical to Delaware's alcoholic beverage industry. The Commission, while not constituted as a collection agency, is established as a regulatory body, and as such must view financial irresponsibility as a component of the industry's regulation. To this end, Rule 37 is promulgated.

B. *Time of Payment.* Each licensed retail vendor (sometimes hereinafter referred to as "licensee") who receives alcoholic liquor from an importer shall make payment for that alcoholic liquor no later than 5:00 P.M. on the second Thursday following the Saturday of the week in which the alcoholic liquor is delivered.

C. *Reporting of Delinquents.* Each importer licensed by the Commission may report in writing to a central reporting agent, appointed by the Delaware Alcoholic Beverage Wholesalers Association, and approved by the Commission, not later than 10:00 A.M. on each Friday, the names, addresses and account numbers of all licensees from whom it has not received the payment required by paragraph B. above and the amount of each licensee's delinquency.

D. *Publication of Delinquent List. Effect.* The central reporting agent may prepare a list of all licensees reported delinquent under paragraph C. hereof for two or more consecutive weeks and may mail or otherwise transmit a copy of such list to the Commission and each importer by 5:00 P.M. on each Friday. The importer who has reported a licensee as being delinquent, within the provisions of this rule, may not sell or deliver any alcoholic liquor to such delinquent licensee except for money immediately paid therefor so long as the licensee is delinquent to the importer.

**3.** This statute provides:

§ 705. Sales by Commission for cash.
Every sale by the Commission shall be for cash.

retailers. Former Rule 37 had a similar purpose, but drew upon 4 *Del.C.* § 705, which requires that all sales by the Commission be for cash, as the source of such regulatory authority.[4] However, new Rule 37 is based upon 4 *Del.C.* § 543(b)(3), which imposes a duty of financial responsibility upon retailers.[5] In addition, the new rule no longer requires wholesalers to submit reports to the Commission of retailers whose accounts are delinquent.

The Association advances several contentions for retaining the former rule and its statutory predicate: (1) the Commission's long-standing interpretation of Section 705, (2) the General Assembly's recent failure to enact the new Rule into statutory form, and (3) the purposes behind the laws regulating the liquor trade.

Basically, this is a case of statutory construction, and we begin with a brief overview of the pertinent legislation. The Commission derives its broad rule-making authority from 4 *Del.C.* § 304(a), by which it adopts and promulgates rules and regulations, and by which it may also buy and sell liquor in its own name. Thus, 4 *Del.C.* § 304(a) provides in pertinent part:

(a) The Commission shall:

(1) Adopt and promulgate rules and regulations not inconsistent with the provisions of this title or of any other law of the State, and all such rules and regulations shall have the force and effect of law;

(2) Establish by rules and regulations an effective control of the business of manufacture, sale, dispensation, distribution and importation of alcoholic liquors within and into the State, including the time, place and manner in which alcoholic liquors shall be sold and dispensed, not inconsistent with the provisions of this

---

**4.** In its most recent form the pertinent provisions of old Rule 37 were:

a. *Purpose.* This rule effects the legislative policy of Section 705, Chapter 7, Title 4, Delaware Code of 1974 to prevent the indirect financing of retail vendors of alcoholic liquors by importers through the extension of credit for alcoholic liquors sold, and to prevent retail vendors from purchasing more alcoholic liquors than their financial condition warrants.

b. *"Cash" Defined.* The word "cash", as used in 4 *Del.C.* § 705, means payment received not later than 5:00 p.m. on the second Thursday following the Saturday of the week in which delivery of alcoholic liquors is made to a retail vendor by an importer, and payment shall be made by retail vendors for such alcoholic liquors not later than 5:00 p.m. on said second Thursday; *Provided:* if payment shall be made by check, such check may be dated not later than the second day next following the date payment is due in accordance with this Rule.

c. *Reporting of Delinquents.* Every importer licensed by the Commission shall report in writing to the Commission, not later than 10:00 a.m. on each Friday, the names, addresses, and IBM numbers of all licensees delinquent as of 5:00 p.m. on Thursday and the amount of the delinquency.

d. *Publication of Delinquent List: Effect.* The Commission shall publish a list of all licensees reported delinquent under paragraph c above, and shall mail or deliver a copy of such list to all importers. The importer who has reported a licensee as being delinquent for the first week, within the provisions of this rule shall not sell or deliver any alcoholic liquor to such delinquent licensee except for money immediately paid therefor so long as the licensee is delinquent to the importer. No importer shall sell or deliver any alcoholic liquor to a licensee reported delinquent for the second week, except for money immediately paid therefor so long as the delinquent licensee remains delinquent to any importer.

g. *Delinquency: Non-Delivery.* Any licensee listed as delinquent in accordance with paragraph d above, who is listed for nine (9) consecutive weeks, shall not be sold or delivered alcoholic liquors by any importer for so long as the licensee is delinquent to any importer and until the licensee shall be removed from the list of delinquents by the Commission.

h. *Interest Charges.* Any licensee reported as delinquent in accordance with this Rule shall be charged by the importer to whom he is indebted one and one-half percent (1½%) per month on the unpaid balance.

**5.** This statute provides in pertinent part:

(b) The Commission may refuse to license an applicant if the Commission has substantial evidence that would reasonably support a belief that:

(3) The applicant appears to be financially irresponsible; 4 *Del.C.* § 543(b)(3).

title or with the provisions of any other law of this State.

* * *

(5) Control the manufacture, possession, sale and delivery of alcoholic liquors in accordance with the provisions of this title;

Section 506 prohibits wholesalers from obtaining an interest in retail outlets.[6] Section 543 lists the grounds for the denial of a liquor license, including an applicant's lack of financial responsibility. (See n. 5, *supra*). Under Section 701, only the Commission, or those licensed by it, may sell al~oholic liquor.[7] By Section 702, the Commission shall sell and deliver all alcohol purchased by licensees, unless otherwise provided under Title 4, and purchasers may buy through the Commission from manufacturers or importers in the manner set forth in the rules and regulations.[8] Section 705 requires that "[e]very sale by the Commission shall be for cash." 4 *Del.C.* § 705. (See n. 3, *supra*.)

The stated purpose of former Rule 37, adopted in 1960, was to execute the legislative policy of Section 705, prohibiting wholesalers from directly or indirectly financing retailers. Paragraph b of the rule defined the term "cash", as used in Section 705, as payment by the second Thursday following the Saturday of the week of delivery. In effect this was a limited exten-

sion of credit for approximately two weeks. The old rule made the Commission a quasi collection agency for the wholesalers by its provisions for the reporting of delinquent accounts, the publication of a list of delinquent retailers, the imposition of an interest charge on unpaid balances, and the ultimate cessation of sales to an offending retailer. (See n. 4, *supra*.)

Proposed Rule 37 is based on Section 543(b)(3), which imposes a duty of financial responsibility upon licensees. Rather than engage in a fictitious and tortured definition of "cash" under Section 705, the new rule simply compels payment within the same time period as the former rule. However, the reporting of delinquents and the publication of the list are made optional, while the restrictive delivery provisions and interest charges are deleted. (See n. 2, *supra*.)

The Commission adopted new Rule 37 in May 1984, and shortly thereafter sought to have it enacted as a statute. However, the latter measure failed to pass. Meanwhile, the Association brought an action in Superior Court, pursuant to Section 10141(a) of the Administrative Procedures Act [29 *Del.C.* § 10141(a)], seeking declaratory relief from the proposed regulation.[9] The Superior Court granted the Commission's motion for summary judgment and upheld the proposed rule. However, the effective-

---

6. The pertinent provisions of that statute are:
   (a) It shall be unlawful:
   (2) For any importer, or the owner, partner or stockholder of an importer, to own or be interested in any manner in any establishment licensed by the Commission to sell alcoholic liquors, either by the bottle or by the glass, to the consumer thereof, for consumption either on or off the premises where sold. 4 *Del.C.* § 506(a)(2).

7. Thus, 4 *Del.C.* § 701 provides:
   No sale and delivery of alcoholic liquor shall be made in this State unless made by the Commission, a manufacturer or other person who holds a license of the Commission to sell and deliver alcoholic liquor and unless the sale and delivery is made to a person who is authorized to receive alcoholic liquor under Chapter 5 of this title.

8. This statute provides:
   The Commission shall sell and deliver all alcoholic liquor purchased by holders of licenses under Chapter 5 of this title for the purpose of reselling or of dispensing such alcoholic liquor, unless otherwise provided in this title, and shall sell and deliver all alcoholic liquor purchased by holders of license to purchase alcoholic liquor for stock, but the Commission may authorize holders of license to order or purchase alcoholic liquor through the Commission from a manufacturer or an importer in the manner set forth in the rules and regulations of the Commission. 4 *Del.C.* § 702.

9. This statute provides:
   (a) Any person aggrieved by and claiming the unlawfulness of any regulation may bring an action in the Court for declaratory relief.

ness and enforcement of the rule have been stayed pending the outcome of this appeal.

## II.

■ First, we address the issue of the Association's standing, which we raised *sua sponte* at oral argument.

It is axiomatic that in order to pursue this action the Association must have standing to do so. That means it must have a real and adverse interest affected by the proceedings. *Wilmington Trust Company v. Barron*, Del.Supr., 470 A.2d 257, 262 (1983). Here, the Association, as a corporate entity, is not subject to the proposed Rule, except that it may appoint a central reporting agent, approved by the Commission, who may receive notice of and publish a list of delinquent accounts. [See new Rule 37 C and D (n. 2, *supra.*)] Furthermore, the alleged injury from the proposed rule affects the individual wholesalers, not the Association itself.

The law, however, is clear that an association has standing to bring suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). In *Hunt*, standing was granted to a plaintiff which was not even a traditional trade association, but an organization with no members, a state agency. This Court has recognized these principles, at least inferentially, in *Delaware State Bar Association v. Alexander*, Del.Supr., 386 A.2d 652, 659, 662 (1978).

In applying the foregoing criteria, it is clear that the members of the Association have standing to sue in their own right. The injury they claim is that the new rule will make it easier for unscrupulous whole-salers to extend credit to retailers in order to gain an advantage over their more ethical competitors. To that extent, the interest in preserving the wholesalers' stake in the local market is germane to the Association's purpose. Finally, the defeat of the proposed rule does not require the participation of all the individual members. Thus, we are satisfied that as a voluntary trade group the Association clearly has standing to challenge the regulation and to pursue the matter on appeal.

## III.

In resolving this issue of statutory construction, our scope of review is whether the Superior Court erred as a matter of law in formulating or applying legal precepts. *Rohner v. Niemann*, Del.Supr., 380 A.2d 549 (1977).

Under 4 *Del.C.* § 304(a), the Commission shall adopt regulations consistent with Title 4. (See p. 1079, *supra.*) If proposed Rule 37 comports with that legislative framework, its implementation will be upheld.

■ At the outset, we note that both the former and new rules limit the availability of credit to liquor retailers. Section 543(b)(3), the statutory basis for the proposed rule, requires retailers to be financially responsible. (See n. 5, *supra.*) The new rule's requirement of payment, approximately two weeks after delivery, is reasonably related to that goal.

While the Association argues that the Commission's action opens the door to certain evils that the former rule excluded, a complete analysis of the statutory scheme demonstrates the futility of that position. Under Section 506 wholesalers are prevented from having an interest in retailers. This prevents the "tied house" in which the wholesaler uses its superior economic position to control a retailer. Moreover, Commission Rule 2 still prohibits the extension of credit by wholesalers to retailers,[10] and

---

10. Rule 2D(4) and (5) provides:

D. *Prohibited Acts.* Except as authorized by

new Rule 37 still requires payment within approximately two weeks—the same basis upon which the former rule defined "cash" under § 705. Thus, the well-established terms of payment continue. The creation of a "tied house" remains illegal. None of these basic principles are affected by the elimination of the old reporting requirements, delivery rules, and interest charges.

■ Viewed realistically, such changes cannot be said to foster illegal practices of credit extension. A wholesaler wrongfully extending credit under the old rule was not likely to report its own improper acts. The Commission evidently concluded that the former reporting requirements added nothing to the basic concept of financial responsibility. The only practical change is that the onus of retailer debt collection has been shifted from the Commission to the wholesalers. Thus, we find nothing in proposed Rule 37 that is inconsistent with Section 304(a) specifically, and the statutory scheme of Title 4 generally. We therefore are satisfied that the financial responsibility mandate of 8 *Del.C.* § 543(b)(3) is an adequate statutory predicate for the Commission's action.

## IV.

The Association contends that Section 705, requiring that every sale by the Commission shall be for cash, renders the proposed rule invalid. (See n. 3, *supra.*) But this argument is based on the notion, contrary to actual fact, that all sales to retailers are "by the Commission." Clearly, that is not the case, and it is readily apparent that Section 705 does not apply to the circumstances we are addressing.

■ Where statutory language is not ambiguous, there is no room for judicial construction. *Balma v. Tidewater Oil Company*, Del.Supr., 214 A.2d 560 (1965). This Court will displace the literal terms of a statute only if an exact interpretation leaves a result inconsistent with the general statutory scheme. *Nationwide Mutual Insurance Co. v. Krongold*, Del.Supr., 318 A.2d 606 (1974). The point of Section 705 is that: "Every sale *by the Commission* shall be for cash" (emphasis added). 4 *Del.C.* § 705. Other statutes refer to sales by *parties other than the Commission*, particularly Sections 701 and 702 outlined above. (See n. 7 and 8, *supra.*) With that in focus we must conclude that Section 705 is limited to sales by the Commission itself, and has no applicability to transactions between wholesalers and retailers—the subject of new Rule 37.

■ The Association argues that by the language of Section 702 ("... the Commission may authorize holders of license to order or purchase alcoholic liquor through the Commission ...") all sales are "by the Commission," and thus must be for cash. However, Section 702 makes the Commission the seller "unless otherwise provided in this title," and Section 701 and 4 *Del.C.* ch. 5 provide for the licensing of others to sell and distribute alcoholic liquor. Purchasing "through the Commission" is merely an alternate method of sale.[11] If anything, this argument places the Association on the horns of a dilemma, because the definition of "cash" in former Rule 37 was in reality an extension of credit violative of the plain language of Section 705.

paragraph E of this rule, no consumer trade licensee, importer (i.e. wholesaler) or supplier of alcoholic liquors licensed by the Commission shall:

    \*    \*    \*    \*    \*    \*

(4) Extend credit to a customer; or
(5) Require quotas or tie-in sales of alcoholic liquors.

11. In actual practice the State of Delaware has never availed itself of the statutory right to engage in the liquor trade, either as a wholesal-

er or retailer. Historically, those functions have been delegated to licensees pursuant to 4 *Del.C.* § 701 and 4 *Del.C.* ch. 5. Apparently the Commission could continue to engage in the fiction of being a seller in those instances where specific brands of alcoholic beverages are unavailable from Delaware wholesalers, and a retailer must procure them from out-of-state, non-Delaware licensed, distributors. But that has nothing to do with the present Rule 37 issues.

The Association claims that the Commission's long-standing reliance on Section 705, as a basis for old Rule 37, should control. There are two problems with this argument. First, to succeed, it requires an indulgence in the dual fictions that all sales are *by* the Commission, when in fact they are by the wholesalers, and that "cash" really means a two week extension of credit contrary to the plain terms of the statute. New Rule 37, based on the more pertinent, and realistic, authority of § 543(b)(3) eliminates the fictitious approach fostered by reliance on § 705. Second, an erroneous interpretation of the law does not become justified by the mere passage of time. *Wilmington Trust Co. v. Barron,* Del.Supr., 470 A.2d 257, 264 (1983). The Association also cites *Park Distributing Co. v. Delaware Liquor Commission,* Del.Gen.Sess., 54 A.2d 551 (1947), for the proposition that the Commission viewed importers (wholesalers) as its agents, but this proposition was clearly rejected in *Taylor v. Highway Truck Drivers & Helpers,* Del.Ch., 129 A.2d 660 (1956).

The Association further argues that proposed Rule 37 should be held invalid because it was rejected, as a statute, by the Delaware State Senate. However, given the existing legislative framework of the law, we do not consider this argument persuasive, especially in light of the many possible different reasons behind a legislative body's decision to accept or reject a bill. The Association also contends that the statutory history and purpose of Section 705 is based upon the prevention of "tied houses," but in view of Sections 506 and 543(b)(3), and Rule 2, that argument loses all force.

## V.

The Commission's proposed Rule 37, compelling retailers to pay wholesalers for alcoholic liquor within a short time of its delivery, is now properly based upon Section 543. The proposed rule fits within the statutory scheme of Title 4, and in conjunction with Sections 506 and Rule 2, it contin-ues to limit the extension of credit to retailers and the development of "tied houses." The deletion of reporting requirements from the rule will not materially affect the Commission's enforcement of its statutory mandate. At most, the new rule removes the Commission from its former quasi status as a debt collector for the wholesalers. Taking due account of the experience and specialized competence of the Commission, and the purposes of the basic law under which it has acted, as we normally are required to do in other contexts [see 29 *Del.C.* § 10142(d) ], we cannot say that this result is insupportable as a matter of law. Thus, we conclude that the Commission's adoption and implementation of proposed Rule 37 is valid. The judgment of the Superior Court is AFFIRMED.