WILMINGTON TRUST COMPANY, Bank of Delaware, Security Pacific Finance Corp., and Household Finance Corp., Plaintiffs Below, Appellants,

v.

Norman A. BARRON, Defendant Below, Appellee,

and

Elaine Snyder, Maxwell Wright, Jesse Wright, and Michael Buzzuto, Intervening Defendants Below, Cross-Appellees.

Supreme Court of Delaware.

Submitted June 6, 1983.

Decided Oct. 20, 1983.

Elwyn Evans, Jr., Wilmington, for plaintiffs below, appellants.

Malcolm S. Cobin, Deputy Atty. Gen., Wilmington, for defendant below, appellee Norman A. Barron.

Kevin E. Walsh, Morris & Rosenthal, P.A., Wilmington, for intervening defendants below, cross-appellees.

Before HERRMANN, C.J., MOORE, J. and LONGOBARDI, Vice Chancellor (by designation of the Chief Justice pursuant to Del. Const. art. IV, § 12).

MOORE, Justice:

This mandamus action was brought in the Superior Court by certain banks and loan companies (lenders) to compel the Honorable Norman A. Barron, Chief Magistrate of the Justice of the Peace Courts to rescind a policy directive he issued regarding the calculation of wages subject to garnishment under Delaware's 85% statutory exemption. This involves an interpretation of 10 *Del.C.* § 4913(a) & (c), which provides:

(a) Eighty-five percent of the amount of the wages for labor or service of any person residing within the State shall be exempt from mesne attachment process and execution attachment process under the laws of this State; but such limitation shall be inapplicable to process issued

for the collection of a fine or costs or taxes due and owing the State.

(c) Wages shall include salaries, commissions and every other form of remuneration paid to an employee by an employer for labor or services, but shall not include payment made for services rendered by a person who is master of his own time and effort.

The lenders contend that the exemption must be applied to gross wages earned, irrespective of any sums withheld for federal, state or local taxes. The Chief Magistrate's policy directive based computation of the exemption upon disposable earnings after deduction of taxes mandated by statute. Certain judgment debtors (debtors), represented by Community Legal Aid Society, Inc. (CLASI), sought and were granted leave to intervene as defendants because the Chief Magistrate's questioned policy directive had been issued upon the urging and at the behest of CLASI. The debtors counterclaimed for a declaratory judgment upholding the Chief Magistrate's policy directive. But having caused this suit by convincing the Chief Magistrate to issue that directive, and gaining entrance to the trial court, purportedly to defend the action on the Chief Magistrate's behalf, CLASI abruptly renounced its position and declared the Chief Magistrate's policy contrary to Delaware law. Now, it wants the 85% exemption applied to gross wages, because under its present theory certain debtors' earnings will be totally immune from garnishment. The Chief Magistrate therefore reentered the action and is represented by the Attorney General.

Since the facts are not in dispute, the lenders moved for summary judgment on their mandamus claim. The Superior Court denied lenders' motion, but entered judgment declaring that the Chief Magistrate's policy directive correctly interprets Delaware's wage exemption law. We agree and

affirm, although we are troubled by the manner in which this lawsuit arose and was permitted to continue by the trial court. Since the rulings of the Superior Court sustained the Chief Magistrate's challenged interpretation, the lenders have appealed, and the debtors have taken a cross appeal.

## I.

Delaware justices of the peace are not lawyers, but they nonetheless are judges who discharge the judicial functions of their courts of limited civil and criminal jurisdiction under the guidance of the Chief Magistrate, who is a member of the Bar. He is designated as the administrative head of these courts by 10 *Del.C.* § 9202(c).[1] Necessarily, his duties require him to advise the justices of the peace regarding interpretations of Delaware law.

Many small claims actions are filed in Justice of the Peace Courts, resulting in judgments which are satisfied by garnishment of the defendants' wages. Because Delaware exempts 85% of a person's earnings from execution, the Chief Magistrate issued a form for the convenience of the justices of the peace outlining the method of calculating wages subject to attachment. Prior to January 1, 1981, this form directed garnishees to deduct and remit 15% of a debtor's gross wages. However, in 1980 CLASI strongly argued, and eventually persuaded the Chief Magistrate, that the attachable wages of a debtor should only be 15% of net earnings, i.e., those remaining after deduction of federal, state and local taxes. Accordingly, the Chief Magistrate issued a revised form for calculating the exemption, so that garnishees were instructed to deduct 15% of the debtor's "disposable earnings". It became effective on January 1, 1981.

The respective positions of the parties are best described by the following examples,

---

1. Under 10 *Del.C.* § 9202(c), the Chief Magistrate's duties are defined as follows:

In addition to the number of justices specified by § 9203 of this title, the Governor, by and with the consent of a majority of all the members elected to the Senate, shall appoint a justice of the peace who shall serve as Chief Magistrate and administrative head of the justice of the peace court system throughout the State.

using hypothetical figures which also ignore any federal restrictions on garnishment:

(a) The Chief Magistrate's interpretation, originally adopted at CLASI's urging, is based on the concept of "disposable earnings" as defined in the Consumer Credit Protection Act, 15 U.S.C. § 1601, et seq. (1976), i.e., "that part of earnings ... remaining after the deduction from those earnings of any amount required by law to be withheld". 15 U.S.C. § 1672(b) (1976). The result is:

| | |
|---|---|
| $150.00 | – gross earnings |
| – 35.00 | – tax deductions |
| – 17.25 | – wage attachment (15% of $115) |
| $ 97.75 | – take home pay |

(b) The lenders' position is that the garnishing creditor automatically receives 15% of the employee's gross wages. The result is:

| | |
|---|---|
| $150.00 | – gross earnings |
| – 35.00 | – tax deductions |
| – 22.50 | – wage attachment (15% of $150) |
| $ 92.50 | – take home pay |

(c) CLASI's new position, which would defeat any garnishment in certain cases, is that 85% of the debtor's gross wages is exempt from garnishment. However, CLASI concedes that the employer's obligation to withhold federal, state and local taxes is superior to the rights of any attaching creditor. The result is:

| | |
|---|---|
| $150.00 | – gross earnings |
| – 35.00 | – tax deductions |
| 0.00 | – wage attachment (since 85% of $150 is $127.50, the latter is greater than the amount left after tax withholding and thus totally exempt) |
| $115.00 | – take home pay (which is less than 85% of $150). |

In defending the Chief Magistrate, the Attorney General also attacks the lenders' choice of mandamus as a means of redress. He notes that the Chief Magistrate's issuance of a policy directive, interpreting a particular aspect of Delaware law for the benefit of the justices of the peace, is a purely discretionary act. Hence, mandamus is not an appropriate remedy. Instead, the lenders should have appealed a judgment based on the challenged interpretation of the wage exemption statute. Thus, the courts would have addressed these issues in a specific case and controversy rather than the wholly questionable way they now arise.

Moreover, the Attorney General asserts, the lenders further muddled their case by arguing to the trial court that if mandamus was not appropriate, then the cause was properly founded on a theory of prohibition. But, the Attorney General argues, prohibition is an extraordinary writ which is only available in the absence of a legal remedy, and for the sole purpose of preventing an inferior court or tribunal from exercising jurisdiction over matters not legally within its cognizance. To all of this the lenders seem to say that even if they are wrong, their case is saved by the debtors' intervention and counterclaim for a declaratory judgment.

## II.

We first turn to the Attorney General's procedural objections, which cause us concern. Were it not for the important public policy questions involved, we would be inclined to accept the Attorney General's arguments and order this case dismissed on the grounds that neither mandamus nor prohibition are proper vehicles for questioning a judicial officer's interpretation of Delaware law. What is really in issue is not the Chief Magistrate's purely advisory interpretation of a Delaware statute [10 *Del.C.* § 4913(a) & (c)], since his views expressed under such circumstances have no force or effect of law, but the legal effect given that interpretation by judgments of the justices of the peace in actual cases and controversies. The proper course was to appeal any judgments upon which the Chief Magistrate's advisory interpretations were based, thereby permitting the issues to be litigated between the real parties in interest. Indeed, this was urged upon the lenders, but they apparently were determined upon their present riskier course.

A judge has no cognizable personal interest before a higher tribunal in seeking to have his rulings sustained. The same

is true of the Chief Magistrate's performance of his duties in advising justices of the peace of his views on issues of Delaware law. Thus, it was just as wrong to join him as a party to an action challenging his wholly advisory statements as it would have been to make him a party to an appeal from a judgment he rendered.

From a legal standpoint it is difficult to conceive of a more unsuitable case for mandamus. The Chief Magistrate's issuance of the challenged policy directive was not occasioned by some mandatory ministerial function, but was an act of discretion pursuant to his powers as administrative head of the Justice of the Peace Courts. This, alone, precludes any issuance of the writ of mandamus. *State v. McDowell,* Del.Supr., 57 A.2d 94 (1947); *Hastings v. Henry,* Del.Supr., 40 A. 1125 (1894); *Capital Educators Ass'n v. Camper,* Del.Ch., 320 A.2d 782 (1974).

As for prohibition, the lenders find themselves in very rough waters at the edge of a shoal. Clearly, the Justice of the Peace Courts have jurisdiction over these small claims, to issue judgments thereon and to grant execution process to enforce the same. Moreover, the Chief Magistrate acted well within his statutory authority under 10 *Del.C.* § 9202(c), supra, in advising the justices of the peace on Delaware law. Finally, there can be no doubt that the lenders had a clear and adequate legal remedy of taking a direct appeal from a judgment based on the Chief Magistrate's advisory opinions. Under such circumstances no viable action could be founded upon any theory of prohibition. *Matushefske v. Herlihy,* Del.Supr., 214 A.2d 883, 885 (1965); *Canaday v. Superior Court,* Del.Supr., 116 A.2d 678 (1955).

For many of the same reasons, we do not believe that the debtors' intervention and counterclaim for a declaratory judgment normally saves the day. Here, the disputed issues arose from judgments issued by courts of competent jurisdiction, all of which could be resolved by direct appeal of the lenders and debtors. Suit against a judicial officer to challenge his rulings, and correct his perceived error, is not a circumstance for which a declaratory judgment is available under Delaware law (10 *Del.C.* § 6501 et seq.). This is made clear by 10 *Del.C.* § 6511, which states in pertinent part:

> "*Parties.* When declaratory relief is sought, all persons shall be made parties who have or claim *any interest which would be affected* by the declaration, . . ." (Emphasis added).

As we have noted, a judicial officer has no cognizable interest in seeking to have his rulings or legal interpretations sustained. Unless real and adverse interests are present, there is no basis for invoking declaratory relief against one who has no role in contesting a claim. *Rollins International, Inc. v. International Hydronics Corp.,* Del.Supr., 303 A.2d 660, 662–663 (1973).

However, we view the merits of this controversy to be of such public importance that we address them despite the patent irregularities by which the lenders and debtors got them here. Thus, our decision to decide the core issues should not be considered precedent for overcoming similar errors in any other cases.

### III.

Turning to the substantive questions, we begin with certain well established principles of Delaware law. When a creditor seeks to satisfy a judgment by the seizure of a debtor's wages, the writ employed for that purpose is entitled "Attachment Fieri facias (Attachment fi. fa.)". The purpose of this writ is to execute upon the defendant's property which is not in his legal possession, but in that of another. 2 V. Woolley, Practice in Civil Actions and Proceedings in the Law Courts of the State of Delaware § 1152 (1906). This execution process requires the sheriff to attach the defendant by "all his goods and chattels, rights and credits, lands and tenements in whose hands or possession, soever, the same

may be found ...". The authority for this is founded upon 10 *Del.C.* § 5031, which provides in pertinent part:

"The plaintiff in any judgment in a court of record, or any person for him lawfully authorized, may cause an attachment, as well as any other execution, to be issued thereon, containing an order for the summoning of garnishees, to be proceeded upon and returned as in cases of foreign attachment. The attachment, condemnation, or judgment thereof, shall be pleadable in bar by the garnishee in any action against him at the suit of the defendant in an attachment...."

Thus, when the property attached is not to be physically seized, but is in the possession or control of another, or if the thing to be attached is not such property as is susceptible of seizure, such as rights and credits, the sheriff must summon the person who has the goods, chattels, rights, credits, money or effects of the defendant in his possession, who is termed the garnishee, to appear at the court to which the writ is returnable, and declare what property of the defendant he has in his hands. Significantly, the writ of attachment fi. fa. is not served upon the defendant, but upon the garnishee. 2 V. Woolley, *supra,* at § 1162.

Therefore, a creditor's right to recover from the garnishee is derived from, and no greater than, the debtor's right to recover from the garnishee in an action at law. As Judge Woolley stated:

An attaching creditor stands in no better position than the defendant in the judgment, as to the collection of a debt due to the latter from the garnishee. The right of such creditor to recover from the garnishee depends upon the subsisting rights between the garnishee and the debtor in the attachment; and the test of the garnishee's liability is that he has funds, property or credits in his hands belonging to the debtor, for which the latter would have a right to sue. The garnishee stands in every respect in the same position as if the suit had been brought by his own creditor. When a debt is due from a garnishee to a judgment debtor by virtue of an agreement existing between them, the garnishee is entitled to avail himself of all the defenses that could be made against the party to whom the debt is owing and with whom the contract was made....

*Id.* § 1190.

If a debtor cannot compel a third party to pay money or deliver certain property to him in an action at law, his creditor has no greater claim by way of garnishment against that third party. This, then, is the measure by which a garnishee's liability to the creditor is determined.

Thus, we face the question whether amounts required to be deducted from an employee's wages by federal and state law for such items as income and social security taxes are beyond the reach of the writ of attachment fi. fa. Under the Social Security Act, an employer is required to collect his employee's portion of the federal insurance contributions tax (FICA) by "deducting the amount of the tax from the wages [of the taxpayer] as and when paid." 26 U.S.C. § 3102(a) (1976).

In the case of income taxes "every employer making payment of wages shall deduct and withhold upon such wages" an amount to be applied to the employee's federal income tax liability. 26 U.S.C. § 3402(a). Indeed, if the employer retains the sums withheld, he is liable to the federal government for that amount, and as federal law also makes clear, the employer "shall be not liable to any person for the amount of (the tax deductions)." 26 U.S.C. § 3403 (1976).

Delaware law is to the same effect. Thus, every employer within this State is required to "deduct and withhold from such wages for each payroll period a tax computed in such manner as to result, insofar as practicable, in withholding from the employee's wages during each calendar year an amount substantially equivalent to the tax reasonably estimated to be due from

the employee" 30 *Del.C.* § 1151(a). The employer is required to remit such deductions to the Division of Revenue [30 *Del.C.* § 1154(a)].

Based upon these statutory requirements, when an employer "withholds the tax from an employee's wage and pays him the balance, the employee has been paid in full. He has received his full wage." *United States Fidelity & Guaranty Co. v. United States,* 201 F.2d 118, 120 (10th Cir.1952). Likewise, employees have no claim for the amounts withheld for taxes. *Aetna Casualty & Surety Co. v. Port of New York Authority,* 182 F.Supp. 671, 674 (S.D.N.Y.1960).

Relating this to the scope of an attachment fi. fa., the trial court ruled that the garnishment formula devised by the Chief Magistrate satisfies both the reasoning of Delaware law in the enforcement of judgments, and federal and state law mandating the withholding of FICA and income taxes. We agree.

If the employee has no claim against his employer for the sums withheld pursuant to federal and state law, clearly the lenders have no greater claim to such funds under an attachment fi. fa.

The lenders argue that the exemption statute [10 *Del.C.* § 4913(a) & (c), supra] speaks of "wages," and if the legislature had meant it to apply only to "net" wages, then the law would have been explicit on the point. According to the lenders, the unmodified use of the term "wages" can only refer to gross, rather than net, salary due an employee. But to give the statute that meaning would change the scope of the writ of attachment fi. fa. without any indication that such was the General Assembly's clear purpose. In view of the historic role of the writ, which has been a part of our statutory law for well over 100 years (see Del.Revised Code 1874, Ch. 111, sec. 45), coupled with the long-standing tax withholding laws, we must presume that in the absence of a specific legislative mandate, these statutes pertaining to the same subject are to be harmonized. *Monroe Park*

*v. Metropolitan Life Ins. Co.,* Del.Supr., 457 A.2d 734, 737 (1983). Thus, we apply the following principle of statutory construction to the wage exemption law:

> In terms of legislative intent it is assumed that whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter, wherefore it is held that in the absence of any express repeal or amendment therein, the new provision was enacted in accord with the legislative policy embodied in those prior statutes, and they all should be construed together.

2A Sutherland, Statutes and Statutory Construction § 51.02, at 290. (3d rev. ed. 1973).

The lenders argue that this principle is inapplicable because for many years the Justice of the Peace Courts interpreted the exemption statute to apply to gross wages. But as we have noted, this was clearly an erroneous view of the law which was corrected by the Chief Magistrate's present policy directive. If anything, this former interpretation resulted from a failure to harmonize all statutory provisions on the subject. An error of law does not become justified by mere passage of time.

As for the debtors' position, the interpretation which they now seek to give the law is wholly at odds with the statutory scheme. The best guide in construing attachment and garnishment legislation is to give it a reasonable interpretation with due regard for both the rights of the creditor and the debtor. 3 Sutherland, Statutes and Statutory Construction § 69.05, at 275 (3d rev. ed. 1973). As for the exemption statute, its obvious purpose is to protect a debtor and the debtor's family, but the rights of the creditor cannot be overlooked in the process of interpretation. Exemption statutes are neither intended to provide a means of fraud by which debtors escape their just obligations nor enacted to provide a windfall to the debtor. Their sole purpose is to provide the necessaries by which to earn and make a living. 3 Sutherland, Statutes and Statutory Construction § 69.06, at 280. Nothing in the statutory scheme

indicates that the legislature intended the exemption statute to preclude all attachments of certain debtors' wages, and for that reason, we cannot accept the position which, if adopted, would have that effect. If we are in error on this point, then we call the matter to the General Assembly's attention for its prompt correction.

While we consider the means by which the trial court reached its decision to have been questionable in view of the procedural irregularities here, we nonetheless conclude that the Superior Court's decision on the substantive issues of law was correct and should be affirmed.

\*     \*     \*

AFFIRMED.