Karen M. HARTLEY–NAGLE and Michael R. Dore, Plaintiffs,

v.

STATE of Delaware, Family Court of Delaware Handlee Johnson Kuhn, as Chief Judge of the Delaware Family Court, Robert B. Coonin, Mark D. Buckworth, William L. Chapman, Jr., Jay H. Conner, Arlene Minus Coppadge, Barbara D. Crowell, Michael K. Newell, Aida Waserstein, William N. Nicholas, William J. Walls, Jr., Mardi F. Pyott, John E. Henriksen, Peter B. Jones, Kenneth M. Millman, as Judges of the Delaware Family Court, Defendants.

C.A. No. 1599–K.

Court of Chancery of Delaware, New Castle County.

Submitted: Dec. 21, 2005.
Decided: Dec. 27, 2005.

---

**24.** 277 F.3d at 433–34.

Ronald G. Poliquin, Esquire, Young, Malmberg, & Howard, Dover, Delaware, Attorney for Plaintiffs.

Aaron R. Goldstein, Esquire, Marc P. Niedzelski, Esquire, and Patricia A. Dailey Lewis, Esquire, Department of Justice, State of Delaware, Attorneys for Defendants.

## OPINION

STRINE, Vice Chancellor.

This case involves a very unusual request. The plaintiffs, Karen M. Hartley-Nagle and Michael R. Dore, have sued the Family Court of this State and all the judges of that court ("Family Court Defendants").[1] In their complaint, the plaintiffs allege that on August 24, 2005 they attempted to attend a "Dependency/Neglect hearing at the Kent County Family Court"[2] and "were denied access to attend the hearing by Judge William J. Walls."[3]

Rather than challenging Judge Walls's alleged decision to exclude their attendance through an appeal to the Delaware Supreme Court, the plaintiffs filed a suit in this court. They seek a declaration by this court that the Family Court's hearing procedures that deal with public access—Family Court Administrative Directive 98.02 ("Directive")—violate Article I, § 9 of the Delaware Constitution, which states in part that "All courts shall be open...." In the Directive, the Chief Judge of the Family Court sets forth in detail procedures to guide the judges of that Court in determining whether particular hearings or judicial records should be open or closed to the general public. The Directive was issued in response to a Joint Resolution of the General Assembly that was intended to promote greater openness in Family Court proceedings.[4]

By its terms, the Directive provides guidance to members of Family Court about how to address requests for access, recognizing that as to many matters heard by Family Court, specific statutes address the subject of whether the matters should be, as a general matter, open or closed to the general public. To that end, the Directive establishes categories of cases that, as either a matter of statutory direction or the Family Court's determination, are presumptively open to the general public (e.g., juvenile delinquency and protection from

---

1. The plaintiffs insisted in naming all fifteen judges of the Family Court as individual defendants despite the Supreme Court's admonishment in *Wilmington Trust Co. v. Barron* that a strategy of that kind was "wrong." 470 A.2d 257, 262 (Del.1983) (explaining it was "wrong" to join the Chief Magistrate as a party to an action challenging his advisory statements).

2. Compl. at ¶ 24.

3. Compl. at ¶ 25.

4. Del. H.J.R. 4, 139th Gen. Assembly (1997).

abuse proceedings) or presumptively closed to the general public (e.g., child custody and divorce disputes). As to each of the four categories, the Directive provides an explanation of the process and factors that should be used by judges to decide a request to either close a hearing or record presumptively open to the general public or open a hearing or record presumptively closed to the general public. Of great weight in that balance is whether a statute of the General Assembly creates a presumption that a particular type of hearing or matter should be closed or open to the general public. As important, the Directive provides guidance to members of the press and public about how to seek access to a presumptively closed hearing or record and the standards that will be applied by the judge receiving the request.

The plaintiffs' sketchy complaint alleges that the Directive—and even more important, numerous legislative enactments addressing the level of public access available in certain Family Court proceedings—are in conflict with Article I, § 9 of the Delaware Constitution and "must be declared unconstitutional."[5] Because the Delaware Constitution was recently amended to include the Family Court as one of the courts established by the Constitution itself,[6] rather than simply by statute, the plaintiffs argue that any prior judicial rulings holding that Family Court could, pursuant to statute or court rule, close certain proceedings or records to general public access are now irrelevant. Having accomplished its longstanding goal of becoming a so-called "Constitutional Court," the Family Court, the plaintiffs say, must now hold all its proceedings in public "absent a compelling government interest."[7] This stan-

dard, crafted by the plaintiffs themselves, is one that they ask the Court of Chancery to establish and to impose on its sister trial court, the Family Court. Specifically, they ask this court to declare that the Directive and a variety of legislative statutes (that the plaintiffs themselves fail to specify) are unconstitutional, and enjoin the Family Court from following either the Directive or the unconstitutional statutes. The plaintiffs also ask this court to order that the Family Court must open all its proceedings and records to public access absent a judicial determination that closure is necessary to protect a compelling government interest.

The Family Court Defendants have moved to dismiss the plaintiffs' complaint on numerous grounds, most of which appear to have merit. I need address only one, however. That is the argument that this court lacks subject matter jurisdiction because there is an adequate remedy at law.

The Family Court Defendants argue that the plaintiffs could have sought precisely the relief they now seek in the Family Court itself. The plaintiffs dispute that contention but they are clearly wrong.

As the plaintiffs themselves admit, they sought access to a dependency/neglect hearing in Family Court in August of this year. Although they failed to attach the form of their request for access to their complaint, the form of their request is not material here. By its plain terms, the Directive contemplates and provides forms for use by members of the public seeking access to presumptively closed Family

---

**5.** Compl. at ¶ 36.

**6.** S.B. No. 61, 143rd Gen. Assembly (2005) (amending Article IV of the Delaware Constitution).

**7.** Compl. at ¶ 50C.

Court proceedings.[8] Even more important, Family Court Civil Rule 24(a)(2) permits an intervention motion to be filed. One obvious motion that could be made under Rule 24(a)(2) by a member of the public is a request for intervention in order to request access to a presumptively closed hearing or record. Indeed, Rule 42.2(a) of the Family Court Civil Procedure Rules seems to anticipate, and almost to invite, such a motion as a basis for seeking intervention, by stating:

> Only those persons shall be admitted to the courtroom who are parties or attorneys representing parties; the Court may also admit persons having a direct interest in the proceeding or whose presence otherwise accords with the public interest.[9]

When the plaintiffs sought access before Judge Walls, they could have made precisely the arguments they now seek to press before me. The plaintiffs could have argued that due to Family Court's newborn Constitutional Court status, Judge Walls could not validly apply either 10 *Del.* *C.* § 1063(a), the statute that presumptively closes dependency/neglect proceedings, or the Directive in deciding whether to allow them access. Instead, the plaintiffs could have contended Judge Walls was duty bound to allow them access unless a party to the case could show that denying them access would impair a compelling governmental interest. And, of course, the plaintiffs could have made more precisely tailored arguments about why they should have been permitted to attend the hearing in question. Assuming that Judge Walls rejected both the plaintiffs' capacious argument and their more narrow ones, the plaintiffs could have sought to appeal his rulings to the Delaware Supreme Court, under Family Court Civil Procedure Rule 75 and Supreme Court Rule 41.[10]

No one with a rudimentary understanding of modern American civil procedure would find this path to review novel, of course. But in case more concrete thinkers yearn for an example that is on point, the Delaware Supreme Court provided one

---

**8.** The Directive includes form motions—a "Motion to Open" and a "Request of Media or Member of Public for Access to Hearing or Records"—to file with the court when moving to open or close a proceeding. The plaintiffs argue these forms are insufficient to explain their request in any meaningful detail; however, these are simply *form* motions. The Directive states only that these forms "were developed for the purpose of aiding the Court with the collection and study of data gathered...." Directive 98.02 ¶¶ 8, 11. No one is prohibited or precluded from including additional information with these forms. The Directive also contemplates that persons interested in opening a proceeding may file a two page motion to open proceedings or records. Although the Directive itself does not state that an interested person or litigant can state the reasons for her request in that motion, that is likely because it was thought obvious that the moving party would include the reasons for her request to open. Should a mov-

ing party believe two pages are insufficient to explain the reasons behind the request, she may take the hardly unusual step of seeking leave from the court to submit a longer motion or a supporting brief.

**9.** Del.Fam. Ct. Civ. Pro. R. 42.2(a).

**10.** In *Wilmington Trust Co. v. Barron*, an action similar to the plaintiffs' challenge to the Directive was initiated against the Chief Magistrate of the Justice of the Peace to rescind a policy directive on the calculation of wages subject to garnishment. The plaintiffs in *Barron* failed to bring before the court a specific case and judgment based on the challenged policy directive and the Supreme Court noted "[t]he proper course was to appeal any judgments upon which ... the advisory interpretations were based, thereby permitting the issues to be litigated between the real parties in interest." 470 A.2d at 261.

in 1974. In *Husband C. v. Wife C.*,[11] a reporter of the Wilmington News–Journal made an oral request to review the file in a divorce case. The oral request was made to the judge handling the divorce proceedings—a Judge of the Superior Court, then and now a Constitutional Court. As of 1974, jurisdiction over divorce cases was vested in the Superior Court.

The Superior Court granted the oral motion for access. While the divorce proceedings were still pending below, the husband in the divorce, an elected official, sought review of that ruling. The Supreme Court stayed the order granting access.[12]

Then, the Supreme Court remanded the matter for purposes that are germane here. The remand was for the limited purpose of allowing the News–Journal to intervene formally in the divorce case, to permit a proper record of the Superior Court's consideration of the request for access to be made, and to allow for a proper certification of the record pertinent to that request.[13] To make the obvious even more plain, the Supreme Court held that an intervention motion was a proper means for a non-party seeking access to put its request before a trial court.[14] That holding clearly undercuts the plaintiffs' contention that it could not have sought the relief it now seeks in the Family Court.

Another aspect of *Husband C. v. Wife C.* bears directly on the adequacy of the plaintiffs' remedy at law. Later in the appellate process, the News–Journal tried to prevent the husband from seeking immediate review of the order granting access on the grounds that the question of access was not a proper subject for interlocutory review.[15] The Supreme Court rejected that argument as a "narrow technical construction designed primarily to avoid a legal determination of the merits of the [husband's] claim."[16] Indeed, the Supreme Court made very clear that it viewed the question of public access as an important and substantial one. To that end, it found it "appropriate to give a liberal construction to [its] appellate power in order to facilitate the ends of justice and to prevent alleged procedural irregularities [in the trial court process] from interfering with appellate rights."[17] Because the trial court's grant of access determined a substantial issue (whether the News–Journal could have access to records that were, as a matter of statute, presumptively closed) and established the legal rights of the parties (whether the News–Journal's need of access outweighed the husband's desire for privacy), the standard required for the Supreme Court to consider an interlocutory appeal was held to be easily satisfied.[18]

---

11. *Husband C. v. Wife C.*, 320 A.2d 717 (Del. 1974).

12. *Id.*

13. *Id.* at 719.

14. *Id.* at 720.

15. *Id.*

16. *Id.*

17. *Id.*

18. The plaintiffs' primary merits argument also is an odd one in light of *Husband C. v.*

*Wife C.* As has been noted, in that case, the Delaware Supreme Court considered an argument regarding access to proceedings in the Superior Court, which was a Constitutional Court. The News–Journal expressly contended that a ruling for the husband that access should be denied would be unconstitutional because it would violate Article I, § 9. The Supreme Court addressed that argument directly and held that Article I, § 9 "was not directed to the question of public trial" and that the Delaware Constitution did not give the News–Journal access to the records it sought to review. *Id.* at 728. That precedent remains good law and was applied to a

Put simply, *Husband C. v. Wife C.* makes clear water even more transparent. If the plaintiffs wish to challenge the statutes and the Directive governing the openness of Family Court proceedings and records, the plaintiffs should file a motion to intervene in a case in Family Court to which they desire access. The plaintiffs then should articulate the broad and narrow reasons that justify their request. If

they receive a ruling that dissatisfies them, they should seek relief from the Delaware Supreme Court. By traveling that well-lit route, they may obtain the relief they seek from this court but in the proper manner. Importantly, if that relief is not granted to them, it will not be because they did not get to press their claim in this court, but because their claim is either entirely without merit [19] or because it is too broad.[20]

Constitutional Court. In that decision, the Supreme Court exhaustively discussed the origins of current Delaware law regarding public access to judicial proceedings, noting that there has never been an unlimited right of public access, and that both Delaware statutory and common law have long provided for limitations on public access when necessary to protect other important and legitimate values. *Id.* at 723–728. Among the cases cited by the Supreme Court in *Husband C. v. Wife C.* include one that also explicitly rejects the broad interpretation of Article I, § 9 that the plaintiffs advance, *Lecates v. Lecates*, 190 A. 294, 296 (Del.Super.Ct.1937) (finding that Article I, § 9 does not prevent Superior Court from closing a divorce proceeding or other matter to public access when there are legitimate grounds to do so), and another in which the Supreme Court noted that it had adopted the policy of publishing opinions in divorce proceedings anonymously, in deference to the presumptively closed nature of divorce proceedings established by statute, *Wife v. Husband*, 269 A.2d 214 (Del.1970).

Of course, the fact that the General Assembly and the judiciary have recognized that there are circumstances when it is appropriate to restrict public access to judicial proceedings and records should not obscure either the General Assembly's or the judiciary's concern that public access be afforded when that does not compromise other legitimate concerns. *See, e.g.,* Del. H.J.R. 4 (resolving that in the interests of enhancing the integrity of the Family Court process "except as otherwise provided by statute, all Family Court proceedings and records shall be open to the public unless the Court determines on a case-by-case basis that privacy is in the interest of the public, the parties or the Court" and that where privacy of proceedings and records is otherwise provided by statute "the Family Court shall affirmatively determine on a case-

by-case basis, in accordance with the standard stated in the applicable statute, whether a particular proceeding or records should be open to the public"); *Katz v. Kronenberg,* 872 A.2d 568, 607 (Del.Ch. May 19, 2004) (noting that the tradition of open proceedings embodied in the Court of Chancery's rules is important "because it reflects Delaware's commitment to the principles of open government reflected in the First Amendment to the United States Constitution, and in Delaware's common law."), *aff'd,* 867 A.2d 902 (Del. 2005).

**19.** *See supra* note 18.

**20.** The plaintiffs' claim is breathtakingly broad: they argue that *all* of the statutes specifically addressing whether Family Court proceedings and records should be open to general public access are unconstitutional, and that the Directive is entirely unconstitutional. It may well be, as the Family Court defendants argue, that such a claim is too broad for assertion by these plaintiffs. Whether that is so does not turn on which trial court to which the argument is first presented. The plaintiffs' broad argument consists of the notion that Article I, § 9 requires that any Family Court proceeding or record be open to the general public unless a compelling government interest would be harmed by the failure to restrict access. That argument can be made in a motion to Family Court to attend a specific hearing or review a specific case file because if that argument is correct, then it would be error for the Family Court to apply any specific Delaware statute that does not track the compelling interest test. It would also be error to apply the Directive, which is designed to work consistently with the applicable statutes and does not track the test the plaintiffs advocate, in addressing a specific request for access.

But, in no event will it be because the plaintiffs were denied the right to proceed with their claim in equity. Indeed, litigants other than the plaintiffs made arguments to the Family Court earlier this year similar to those made by the plaintiffs here. In response, Judge Pyott of the Family Court issued a thorough decision addressing those arguments in the case of *Smith v. Ingalls,* albeit not in the manner the plaintiffs would have liked.[21] Nonetheless, the *Smith v. Ingalls* decision illustrates that the plaintiffs can obtain an appealable decision in Family Court if they proceed in the proper fashion under the Family Court Rules.

For these reasons, the plaintiffs' claim is dismissed for lack of subject matter jurisdiction. I do not address whether it remains possible for the plaintiffs to seek appellate relief from Judge Walls's alleged order denying them access to an unspecified dependency/neglect hearing. If such relief is still desired at this late date, the plaintiffs should pursue it in a court other than this one.[22] If, as one suspects from reading the complaint and the plaintiffs' submissions on this motion, the plaintiffs are less interested in the particular case before Judge Walls and more in presenting their broadest arguments, they are of course free to proceed in a more rational fashion by seeking access to a different Family Court proceeding and starting afresh. But in either event, there will be no proper basis for this court to consider the issues the plaintiffs seek to litigate.

IT IS SO ORDERED.

---

**21.** *Smith v. Ingalls,* No. 04–00681 (Del.Fam. Aug. 22, 2005) (explaining in a detailed ten page decision the reasons for denying a request for access by member of the public).

**22.** For example, if the plaintiffs comply with 10 *Del. C.* § 1902, this proceeding may be transferred to Family Court for hearing and determination.