# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WILLIAM FRETZ, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. K22A-05-003 NEP |
| | ) | |
| UNEMPLOYMENT INSURANCE | ) | |
| APPEAL BOARD and VINCENZO | ) | |
| MADDALENA, | ) | |
| | ) | |
| Appellees. | ) | |

Submitted: September 15, 2022
Decided: December 6, 2022

## <u>MEMORANDUM OPINION AND ORDER</u>

Upon Appellant's Appeal from the Decision of the Unemployment Insurance
Appeal Board

### REVERSED AND REMANDED

William Fretz, Dover, Delaware, *Pro Se Appellant*.

Michael G. Rushe, Esquire, Hudson, Jones, Jaywork & Fisher, LLC, Dover,
Delaware, *Attorney for Appellee Vincenzo Maddalena.*

Victoria E. Groff, Esquire, Department of Justice, Wilmington, Delaware, *Attorney
for Appellee Delaware Unemployment Insurance Appeal Board.*

**Primos, J.**

Before this Court is the appeal of William Fretz (hereinafter "Claimant") from the decision of the Unemployment Insurance Appeal Board (hereinafter the "Board") that Claimant is disqualified from receiving unemployment benefits. Claimant argues that the Board erred in concluding that he voluntarily quit his job after he became medically unable to continue performing his job duties and his employer could offer no accommodations. Claimant's employer does not dispute that Claimant left involuntarily for medical reasons but argues that he is nonetheless disqualified from receiving unemployment benefits because he is not "able to work and available for work" within the meaning of 19 *Del. C.* § 3314(1). For the reasons that follow, the Board's decision is **REVERSED** and **REMANDED**.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Claimant is a former employee of Maddalena Parise Inc. d/b/a Mari Monti Ristorante.[2] He worked there as an assistant manager, a delivery driver, and a dishwasher. On July 27, 2021, Claimant was admitted to the hospital with symptoms of a heart fibrillation and remained there for several days.[3]

Upon his initial release from the hospital, Claimant was not cleared "to work in any capacity."[4] However, after a follow-up visit with his physician on September 13, 2021, he was cleared to work a "desk job" but remained "unable to do physical stress related jobs."[5] In a document submitted to the Delaware Department of Labor (hereinafter the "Department") on February 9, 2022, Claimant's physician reiterated

---

[1] The facts herein are drawn from the paper copy of the record (hereinafter "R.") that was filed with the Prothonotary. *See* D.I. 8.

[2] Claimant refers to the employer in his brief as "Vincenzo's Pizzeria," presumably the restaurant's popular name. Pet'r's Opening Br. (D.I. 11) [hereinafter "Opening Br."] at 4.

[3] R. at 60.

[4] R. at 26.

[5] R. at 29.

that Claimant would be able to work full time at a desk job of "light-moderate intensity" so long as it did not involve lifting anything heavy.[6]

Claimant contacted Vincenzo Maddalena (hereinafter "Employer")[7] after the September 13, 2021, medical visit, asking to return to work in a capacity consistent with his medical restrictions. Employer responded that the restaurant offered no sit-down or desk jobs and that he was thus unable to accommodate Claimant's restrictions.[8]

Claimant filed a claim for unemployment benefits with the Department's Division of Unemployment Insurance. The Claims Deputy denied the application, concluding that Claimant was disqualified from unemployment benefits under 19 *Del. C.* § 3314(1),[9] which provides, in relevant part, that an individual is disqualified for benefits

> [f]or the week in which the individual **left work voluntarily without good cause attributable to such work** and for each week thereafter until the individual has been employed in each of 4 subsequent weeks (whether or not consecutive) and has earned wages in covered employment equal to not less than 4 times the weekly benefit amount. However, if an individual has **left work involuntarily because of illness, no disqualification shall prevail after the individual becomes able to work and available for work** and meets all other requirements under this title, **but the Department shall require a doctor's certificate to establish such availability** . . .[10]

---

[6] R. at 30.

[7] Mr. Maddalena was named as an individual Appellee in this action and is identified as "Employer" in his own answering brief. While the record shows that Claimant was technically employed by Maddalena Parise Inc. d/b/a Mari Monti Ristorante, it is also evident that Mr. Maddalena was responsible for employment decision making. He will be referred to herein as "Employer" for the sake of brevity.

[8] R. at 49, 51.

[9] R. at 68.

[10] 19 *Del. C.* § 3314(1) (emphasis supplied).

3

The Claims Deputy reasoned that Claimant had voluntarily left his job for personal or health reasons and had failed to meet his burden to establish that he had left with good cause attributable to his work.[11]

Upon Claimant's appeal of this determination, the Department's Appeals Referee (hereinafter the "Referee") held a hearing and heard testimony from both Claimant and Employer.[12] The Referee affirmed the determination of the Claims Deputy but on different grounds,[13] concluding first that Claimant had "involuntarily separated from his position of employment due to a medical condition."[14] However, the Referee found that Claimant had not satisfied the statutory requirement of providing a doctor's certificate indicating that he was able to work and available for work, and thus found him ineligible for benefits.[15] Claimant appealed to the Board and argued that he had not had sufficient time to produce the necessary paperwork for the Referee because, due to a mailing error, he had received only two days' notice of the hearing.[16]

At a hearing before the Board on April 20, 2022, Claimant was allowed to enter additional medical documentation into the record.[17] The document included a letter from Claimant's physician and several attachments showing that Claimant was not able to return to his old position at the restaurant but that he was medically able to perform a desk job as of September 13, 2021.[18] The Board issued a written decision on May 10, 2022, in which it mischaracterized the Referee's decision, stating that the Referee had found that Claimant "had not shown sufficient evidence

---

[11] R. at 69.
[12] R. at 40–53.
[13] R. at 61.
[14] R. at 60.
[15] R. at 60–61.
[16] R. at 11, 37.
[17] R. at 11–12.
[18] R. at 26–30.

that there was good cause to voluntarily leave his employment."[19]  Concluding without further analysis that Claimant had left work voluntarily, the Board proceeded directly to the issue of whether he had had good cause connected to his work to quit[20] (a requirement that does not apply when an individual leaves work involuntarily because of illness[21]).  The Board concluded that Claimant had left work for "personal reasons" and had not "establish[ed] good cause to quit under Delaware law."[22]

The Board's decision became final on May 20, 2022, and Claimant filed a notice of appeal in this Court on May 31, 2022.[23]  On July 22, 2022, Claimant filed an Opening Brief, in which he argued that the Board had erred in concluding that he had voluntarily quit his job.[24]  On July 28, 2022, Employer filed an Answering Brief, essentially conceding that Claimant had left work involuntarily but arguing that Claimant's disqualification from receiving benefits is nonetheless supported by substantial evidence in the record.[25]  Claimant did not file a reply brief, and the matter was submitted for decision on September 15, 2022.

## STANDARD OF REVIEW

19 *Del. C.* § 3323(a) provides that when the Superior Court reviews decisions of the Board, "the findings of the [Board] as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the Court

---

[19] R. at 22.
[20] R. at 23 ("The issue before the Board is whether Claimant has shown 'good cause' to leave his employment.").
[21] 19 *Del. C.* § 3314(1).
[22] R. at 24.
[23] Notice of Appeal (D.I. 1).
[24] Opening Br. (D.I. 11).
[25] Resp't Below/Appellee Vincenzo Maddalena's Answering Br. (D.I. 12) [hereinafter "Answering Br."].  Counsel for the Board sent a letter to the Court indicating that it did not intend to file an answering brief or to otherwise participate in the appeal, noting that a lower tribunal "does not have an interest in seeking to have its decision upheld on appeal."  Letter (D.I. 13) (citing *Wilmington Trust Company v. Barron*, 470 A.2d 257, 261 (Del. 1983)).

shall be confined to questions of law." In other words, the Court's review is "limited to the question of whether there is substantial evidence in the record to support the Board's findings and whether such findings are free from legal error."[26] The Court reviews questions of law *de novo*.[27]

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[28] The Court does not reweigh the evidence or make its own factual findings and must view the record in the light most favorable to the prevailing party before the Board.[29] This deferential standard of review, however, "is not meaningless," i.e., courts will "not defer to findings that are not rationally supported by substantial evidence in the record."[30] Moreover, the Court will reverse and remand the case for further proceedings when it "finds that 'there were no adequate findings of fact and conclusions of law on [a] pivotal issue.'"[31]

## DISCUSSION

A claimant bears the burden of establishing his or her eligibility for unemployment benefits.[32] Where a claimant leaves work voluntarily, that burden is

---

[26] *Murphy & Landon, P.A. v. Pernic*, 121 A.3d 1215, 1221 (Del. 2015); *see also Petty v. Univ. of Delaware*, 450 A.2d 392, 396 (Del. 1982) ("Hence, the Board's findings of fact outlined above being clearly supported by substantial evidence, must be deemed 'conclusive' and be affirmed." (quoting 19 *Del. C.* § 3323(a))).

[27] *Delaware Tech. & Cmty. Coll. v. Binns*, 2020 WL 1164683, at *2 (citing *Person-Gaines v. Pepco Holdings*, 981 A.2d 1159, 1161 (Del. 2009)).

[28] *Id.* (quoting *Optima Cleaning Sys. v. Unemployment Ins. Appeal Bd.*, 2010 WL 5307981, at *2 (Del. Super. Dec. 7, 2010)).

[29] *Id*; *see also Briddell v. Dart First State*, 2002 WL 499437, at *2 (Del. Super. Mar. 28, 2002) ("The appellate court does not weigh the evidence, determine questions of credibility, or make its own factual findings. It merely determines if the evidence is legally adequate to support the agency's factual findings.") (internal citations omitted).

[30] *Murphy*, 121 A.3d at 1222.

[31] *Tucker v. Unemployment Ins. Appeal Bd.*, 2014 WL 3565687, at *4 (Del. Super. July 18, 2014) (quoting *Bd. of Educ., Capital Sch. Dist. v. Johns*, 2002 WL 471175, at *2 (Del. Super. Mar. 27, 2002)).

[32] *Briddell*, 2002 WL 499437, at *3 ("The burden is on the claimant to establish that she is entitled

6

to show that the claimant left with good cause attributable to his or her work.[33]  If the claimant leaves involuntarily because of illness, the burden is to show that the claimant is able to work and available for work (a showing that must be substantiated by a doctor's certificate).[34]  Both the Board and the Claims Deputy erroneously analyzed this case as one of voluntary departure, despite Claimant's documented medical inability to continue in his prior occupation.  The Referee correctly concluded that he had left work involuntarily due to illness but made a factual finding that Claimant had failed to meet his burden of providing a doctor's certificate showing that he was able to work and available for work.  However, the Court cannot affirm based on the Referee's decision because Claimant later submitted a letter from his doctor to the Board.  Because the Board's conclusion that Claimant left voluntarily is erroneous as a matter of law, and the record contains no factual finding that Claimant is not available and able to work despite being cleared for desk work by his doctor, this case must be remanded to the Board.

I.  **The Board's Conclusion that Claimant Voluntarily Left His Employment was Erroneous as a Matter of Law.**

Claimant's principal argument on appeal is that the Board erred in concluding that he voluntarily left his job.[35]  While the Board's findings of fact are entitled to deference, the question of whether those facts establish that an employee left work voluntarily is a question of law reviewed *de novo*.[36] An employee leaves work

---

to unemployment benefits." (citing *Petty*, 450 A.2d at 395)).

[33] *See* 19 *Del. C.* § 3314(1).

[34] *See id.*

[35] Opening Br. at 5.

[36] *See Mba v. Bayhealth Med. Ctr., Inc.*, 2014 WL 7009507, at *3 (Del. Super. Dec. 5, 2014) ("Whether this factual situation amounted to a voluntary quitting of the job without cause is a question of law subject to review by this Court." (quoting *Gsell v. Unclaimed Freight*, 1995 WL 339026, at *2 (Del. Super. May 3, 1995))); *Andress v. F. Schumacher & Co.*, 1993 WL 542062, at *3 ("Whether the undisputed factual situation amounted to a voluntary quitting of the job without just cause is a question of law subject to review.  The focus then becomes whether the Board's factual determinations support its legal conclusion.") (internal citation omitted).

voluntarily "when he or she leaves on their own motion, as opposed to being discharged by the employer."[37] This means that the employee had "a conscious intention to leave or terminate the employment."[38]

Here, the Board made no findings of fact in support of its conclusory assertion that Claimant had voluntarily left his job. The uncontroverted testimony in the record shows that Claimant had requested to return to work with accommodations and that Employer had informed him that there was no work available at the restaurant that was compatible with Claimant's health restrictions. The following exchange between the Referee and Claimant clarifies where things stood between Claimant and Employer:

> Referee: What did you do, how did you leave it with the employer?
>
> Claimant: Just like I said, I, you know, that I needed to get back to work and do some work and, you know, I said that the doctor said I couldn't – I had to have a sit-down job and, you know, I told him what I needed and that's basically how we left it.
>
> Referee: And did the employer tell you that they could not accommodate those restrictions?
>
> Claimant: Yes.
>
> Referee: Okay. So, then what did you do?
>
> Claimant: Then, like I said, I started putting in applications for desk jobs like receptionist work.
>
> Referee: All right. So, at that – the point that you had the conversation where you told the employer that you had these restrictions, did you – at that point, did you sever your relationship with the employer?

---

[37] *Tubbs v. TRG Field Sols.*, 2011 WL 4447978, at *2 (Del. Super. July 25, 2011) (citing *Gsell*, 1995 WL 339026, at *3); *Walker v. Unemployment Ins. Appeal Bd.*, 2015 WL 1542034, at *2 (Del. Super. Mar. 12, 2015).

[38] *Bihac v. Family Med. Associates*, 2011 WL 5346092, at *2 (Del. Super. Nov. 4, 2011) (quoting *Laime v. Casapulla's Sub Shop*, 1997 WL 524063, at *3 (Del. Super. May 20, 1997)), *aff'd*, 41 A.3d 429 (Del. 2012) (TABLE); *Andress*, 1993 WL 542062, at *3 ("In a voluntary quit situation, the employee must have had a conscious intention to leave or terminate the employment.").

Claimant: I mean, I didn't physically quit. I still talk to him.[39]

Employer subsequently testified that Claimant's description was "pretty accurate," and that Claimant "couldn't do the demanding job that he was doing before" and "unfortunately, I don't offer any desk jobs."[40]

Viewing the evidence in the light most favorable to the prevailing party, the record shows that Claimant and Employer reached an impasse, wherein Employer was willing to return to work subject to the condition that he could perform a desk job with no heavy lifting, and Employer responded that no such work was available. There is no evidence in the record that Claimant's employment was formally terminated, i.e., he was never explicitly fired but he also never explicitly quit. Nonetheless, it is also undisputed that Claimant no longer works for employer.[41] Based on this evidence, the Referee concluded that Claimant "involuntarily separated from his position of employment due to a medical condition."[42] The Board, however, affirmed on an entirely different basis and inexplicably failed to indicate why, or even to acknowledge that, its conclusion that Claimant voluntarily quit was in direct conflict the Referee's findings.[43]

The Court agrees with the Referee that Claimant involuntarily left work because of his health condition. Rather than demonstrating a conscious intent on Claimant's part to leave his job, the record shows that he actively sought to return to work, albeit with medically necessary accommodations. Moreover, the statute expressly contemplates a scenario where "an individual has left work involuntarily because of illness."[44] The uncontroverted evidence shows that Claimant's health

---

[39] R. at 49–50.
[40] R. at 51.
[41] R. at 51. The Claims Deputy's Findings of Fact include a notation that the "employer stated that the claimant was on a leave of absence due to medical issues." R. at 68.
[42] R. at 60.
[43] R. at 22–24.
[44] 19 *Del. C.* § 3314(1).

9

precluded him from performing his previous job or any other job his employer could offer. His departure from the job was thus "voluntary" only in the sense that he did not disregard his doctor's instructions and return to performing tasks that would endanger his health and perhaps his life. The Court will not adopt such a strained construction of "left work voluntarily"—especially where the statute provides the readily apparent alternative of "left work involuntarily because of illness" to encompass this precise situation.[45] The Board therefore erred in analyzing Claimant's departure under the voluntary prong of the statute.[46]

## II. The Record Contains no Factual Finding that Claimant was Not Able to Work and Available to Work after September 13, 2021.

Employer does not argue on appeal that Claimant left work voluntarily.[47] However, he asks the Court to affirm on an alternative basis and hold that the record supports the conclusion that Claimant "is not currently able and available to work due to his medical restrictions."[48]

When an individual leaves work involuntarily because of illness, 19 *Del. C.* § 3314(1) provides that "no disqualification shall prevail after the individual becomes able to work and available for work and meets all other requirements under this title, but the Department shall require a doctor's certificate to establish such

---

[45] *See Ingram v. Thorpe*, 747 A.2d 545, 547 (Del. 2000) ("Where the language of the statute is unambiguous, no interpretation is required and the plain meaning of the words controls. If there is uncertainty, however, the statute must be construed as a whole in a manner that avoids absurd results.") (internal citations omitted).

[46] *See Evans v. Blevins*, 2011 WL 7063361, at *1–3 (Del. Super. Dec. 7, 2011) (holding that "[a]s a matter of law, this case should have been analyzed under the involuntary prong of the statute because there is not substantial evidence that [Claimant] left voluntarily" where claimant was told by his physician to stop work because of "the presence of an aneurysm").

[47] Answering Br. at 5 ("Employer does not dispute that [Claimant] left work involuntarily due to illness.").

[48] *Id.*

10

availability."  The phrases "able to work" and "available for work" also appear in 19 *Del. C.* § 3314(8) and 19 *Del. C.* § 3315(3).[49]

In *Petty v. University of Delaware*, the Delaware Supreme Court examined the terms "available for work" and "able to work" as used in what is now 19 *Del. C.* § 3315(3).[50]  The Court explained that the terms are "complementary" but not "synonymous."[51]  An individual is "available for work" when he or she is "willing, able and ready to accept employment which she has no good cause to refuse, that is, she is genuinely attached to the labor market."[52]  Moreover, the Court found that the availability requirement "incorporates both the requirement of ability to work and qualification through skill, training or experience for a particular occupation, commonly expressed in terms of 'an identifiable labor market.'"[53]  Under this definition, a claimant does not have to be able to return to his usual or prior job in order to be available for work.[54]  Rather, he is available for work so long as "he is able to work and is qualified for work, albeit in a different occupation."[55]

---

[49] The General Assembly swapped 19 *Del. C.* § 3314 and 19 *Del. C.* § 3315 in 2004.  *See* Del. S.B. 327, 142d Gen. Assem. (2004) (swapping the section numbers in order to comply with the federal law requirement that grounds for disqualification from unemployment benefits be considered before eligibility for benefits is addressed).

[50] *Petty v. Univ. of Delaware*, 450 A.2d 392, 395–96 (Del. 1982).

[51] *Id.* at 395.

[52] *Id.*

[53] *Id.* (quoting *Harper v. Unemployment Ins. Appeal Bd.*, 293 A.2d 813, 816 (Del. Super. 1972)).

[54] *See Nilnamow v. E.F. Techs., Inc.*, 2011 WL 1102977, at *4 (Del. Super. Mar. 24, 2011) ("A claimant's availability need not be for his usual type of work; availability for a different type of work will suffice."); *Briddell*, 2002 WL 499437, at *2 ("It is not required that the claimant be available for his or her usual type of work. Availability for work in another type of employment is sufficient.") (internal citation omitted); *Tucker*, 2014 WL 3565687, at *4 ("[W]here a claimant submits a medical certificate that shows he is unable to work his 'usual' occupation, the Board is still required to consider whether the claimant is 'available for work.'" (quoting *Drewry v. Air Liquide–Medal, LLC,* 2011 WL 6400550, *2 (Del. Super. Dec. 13, 2011))); *but see Garrett v. Unemployment Ins. Appeals Bd.*, 2017 WL 2705382, at *2 (Del. Super. June 22, 2017) ("Delaware courts have previously held that an employee's ability to work at restricted duty that his or her employer cannot accommodate is insufficient to establish that an individual is available for work and thus entitled to unemployment benefits.").

[55] *Tucker*, 2014 WL 3565687, at *5.

Here, Claimant testified to the Referee that he was applying for "desk jobs like receptionist work."[56] The burden is on Claimant to establish that he is qualified for such work: [57] whether he has met this burden is a factual question that the Court will not address in the first instance.[58] The Referee concluded that Claimant had failed to provide the requisite doctor's certificate and was thus disqualified from benefits.[59] However, the Referee never had the opportunity to rule on whether the documents added to the record at the Board hearing, including a doctor's note, established that Claimant was able to work and available for work.[60] The Board likewise never addressed the issue, analyzing Claimant's claim under the good cause to voluntarily leave work prong instead. Since the record does not contain a factual determination that Claimant is not able and available to work a sedentary desk job, the case must be remanded to the Board for further factual findings.[61]

---

[56] R. at 50.

[57] *See Briddell*, 2002 WL 499437, at \*3 ("There is nothing in the record in this case to suggest any particular type of work for which the claimant may be qualified with those restrictions. The burden is on the claimant to establish that she is entitled to unemployment benefits."). Unlike in *Briddell*, a remand is necessary in this case because there is no finding in the record that Claimant is not available for work. Moreover, this case differs factually from *Briddell* in that Claimant's limitation to sedentary work is not qualified with the phrase "as tolerated." *Compare id.* (affirming where claimant was cleared only for "sedentary, light duty work as tolerated" because "[a]ny person whose standing, walking and sitting are restricted to a self-determined tolerance is of some questionable employability") *with Tucker*, 2014 WL 3565687, at \*5 (remanding for further factfinding where claimant was "permitted to work full-time sedentary desk work" and testified that "he had been searching for desk work in an office").

[58] *See Drewry*, 2011 WL 6400550, at \*2 ("This court will not make its own factual findings, determine witness credibility, or resolve conflicts in testimony. That role is reserved exclusively for the Board.") (internal citation omitted).

[59] R. at 60–61.

[60] The Board has discretion either to decide an appeal based on evidence previously submitted alone or to "direct the taking of additional evidence." 19 Del. Admin. C. § 1201-6.3.

[61] *See Tucker*, 2014 WL 3565687, at \*5 (remanding to the Board to "specifically address whether Appellant could be considered disabled from any type of work for which he is qualified."); *Johns*, 2002 WL 471175, at \*2 ("To be eligible for benefits the Board must find that Claimant is 'able to work and is available to work and is actively seeking work....' Because there were no adequate findings of fact and conclusions of law on this pivotal issue, the decision of the Board must be reversed and remanded for further proceedings." (quoting 19 *Del. C.* § 3314(3) (redesignated 19

12

Finally, Employer's brief suggests that Claimant is disqualified from receiving benefits until he presents "a doctor's note that he is able and available to work *without restrictions*."[62] This formulation finds some support in Delaware case law,[63] but the Court cautions the Board on remand that the "without restriction" language does not appear in the statute and should not be construed to conflict with *Petty*'s teaching that an individual's availability for work is to be judged with respect to his employability in an "identifiable labor market" and thus does not depend on his ability to return to his previous workplace.[64]

## CONCLUSION

The Board erred as a matter of law in concluding that Claimant left work voluntarily without good cause. Because neither the Board nor the Referee addressed whether Claimant's doctor's note established his availability for work after September 13, 2021, the Board's decision is **REVERSED** and the matter **REMANDED** for further proceedings consistent with this opinion. Jurisdiction is not retained.

---

*Del. C.* § 3315(3) effective June 30, 2004))).

[62] Answering Br. at 5 (emphasis supplied).

[63] *See e.g. Brown v. Unemployment Ins. Appeal Bd.*, 2011 WL 863310, at *2 (Del. Super. Feb. 3, 2011) ("In order to be considered able to work and available to work, Brown must present documentation from her doctor indicating that she is released to go back to work without restriction."); *Jackson-Mills v. Carter Racing Stables*, 2012 WL 3025860, at *2 (Del. Super. July 25, 2012) ("Claimant must present documentation or testimony from her doctor indicating that she is released to go back to work *without restriction*.") (emphasis in original); *Garrett*, 2017 WL 2705382, at *2 ("As the Board determined, once Ms. Garrett receives a doctor's certificate clearing her to return to work without restrictions, this disqualification will no longer remain in effect.").

[64] *See Petty*, 450 A.2d at 395–96 (affirming the Board's conclusion after discussing the claimant's qualifications and the Board's reasons for rejecting possible alternative occupations).

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP:tls
oc: Prothonotary
cc: William Fretz, *Pro Se – Via U.S.P.S*
Counsel of Record - *Via File & ServeXpress*

14