**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

**IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| **MURPHY & LANDON, P.A.,** | ) | |
| | ) | |
| | ) | |
| **Appellant,** | ) | |
| | ) | |
| v. | ) | **C.A. No. N13A-03-012 FWW** |
| | ) | |
| | ) | |
| **CHELSEY F. PERNIC** | ) | |
| | ) | |
| | ) | |
| **Appellees.** | ) | |


Upon Appellant's Appeal from the Unemployment Insurance Appeal Board's Decision:
**AFFIRMED.**


**<u>OPINION AND ORDER</u>**

Submitted: July 18, 2013
Decided: July 11, 2014


Lauren A. Cirrinicione, Esquire, Murphy & Landon, P.A., 1011 Centre Road, Suite 210, Wilmington, DE; Attorney for Appellant.

Chelsey F. Pernic, *pro se*, 307 Ohio Avenue, Wilmington, DE; Appellee.


**WHARTON, J.**

# I. INTRODUCTION

Murphy & Landon ("Firm"), a law firm in Wilmington, Delaware, filed this appeal from a decision of the Unemployment Insurance Appeal Board ("UIAB" or "Board") on June 5, 2013. The appeal was originally assigned to a judge of this Court on September 3, 2013. It was reassigned to a second judge on December 20, 2013. Subsequently that judge retired on May 2, 2014. It has been under consideration by this judge since June 6, 2014.

On appeal, the Court must determine whether the Board's decision to uphold the ruling of the Appeals Referee awarding benefits to Appellee, former Firm employee Chelsey Pernic ("Pernic"), is supported by substantial evidence and free from legal error. Upon consideration of the pleadings before the Court and the record below, the Court finds that the Board's ruling is supported by substantial evidence and free from legal error. Accordingly, the Board's decision is **AFFIRMED**.

# II. FACTUAL AND PROCEDURAL CONTEXT

Pernic worked as a legal assistant at the Firm intermittently for over two years.[1] Pernic's aunt, a paralegal at the Firm, recommended her for the job.[2] Pernic was considered a "full time" employee for at least half of her employment, including when her employment was terminated on May 11, 2012.[3] Pernic's discharge letter indicates the reasons for her termination were "many," citing lateness, an uncooperative attitude, failure to take supervision, a financial policy violation, resisting assignments, failing to work required overtime, and open rudeness towards her supervising attorney and other employees.[4]

---

[1] R. at 89.
[2] R. at 34, 50.
[3] R. at 88–89.
[4] R. at 18–19.

On May 13, 2012, Pernic filed a claim for benefits with the Delaware Department of Labor's Division of Unemployment Insurance ("Department").[5]  In her claimant fact-finding questionnaire, Pernic "disagreed" with the reasons given for her termination, stating that she was not aware of these problems with her performance prior to being discharged.[6]  She did admit to meeting with her supervising attorney, Francis Murphy ("Murphy"), "in late September or early October of 2011," but stated that she was not given "specific examples or dates of incidents" that may have led to her termination.[7]  The Firm maintains that Pernic was discharged because of her "misconduct," reiterating the explanations stated in her termination letter. [8]

On May 31, 2012, the Claims Deputy for the Department awarded Pernic unemployment insurance benefits, finding the Firm failed to meet its burden of showing it discharged her for "just cause in connection with the work."[9]  On June 8, 2012, the Firm appealed the Claim Deputy's decision.[10]  At a hearing held on August 13, 2012, the Appeals Referee indicated that the hearing would focus on "the very last incident that led to termination."[11]  Murphy contended that "there was more than one reason" for terminating Pernic, to which the Referee responded, "if you can give me a date and you can name multiple events or multiple occurrences on that

---

[5] R. at 2.

[6] R. at 1. Pernic stated: "I was never aware that I did not work cooperatively with other staff members, nor was I made aware of certain policies referenced that I allegedly violated.  I processed payments during the entire course of my employment without notice of violating firm policy."

[7] *Id*.

[8] R. at 10, 15–17.

[9] Pursuant to 19 *Del. C.* § 3314(2).  R. at 22–23.  As a finding of fact the report stated: "There is no evidence to suggest that the claimant was given an unequivocal warning about either her attendance or performance.  The final incident occurred when the employer discovered that the claimant requested and sent a $3000 check to a witness without prior authorization from her direct supervisor.  The claimant stated that she requested and sent checks regularly without authorization."

[10] R. at 27.

[11] R. at 37.  Stating, "Whatever the date was that that incident occurred and then describe what the incident was.  We don't focus on a variety of different incidents."

same day, then that would be permissible . . . they would have to have all occurred on the same date."[12]

Given the Referee's instructions, the hearing focused on Pernic's alleged violation of the Firm's financial policy—specifically, the unauthorized payment of $3,000 to an expert witness as a deposition fee.[13] Murphy claimed that "the fee was so exorbitant . . . I intended to file a motion with the Court or negotiate a lower rate with the attorney for the other side which I'm obligated to do first."[14] Murphy argued that it was "firm policy" that no legal assistant may pay invoices without approval from a supervising attorney.[15] However, during Pernic's cross examination of Murphy, Murphy admitted that the Firm does not have a "written policy," but rather a policy that "every legal assistant in the firm knows."[16]

Throughout the hearing, Murphy was precluded from presenting evidence regarding Pernic's other alleged misconduct.[17] The Appeals Referee affirmed the decision of the Claims Deputy, finding Pernic was entitled to receive benefits.[18] The Firm appealed the Referee's decision to the Board, indicating they were "incorrectly prohibited . . . from presenting evidence of 'multiple incidents and issues' that were just cause for termination."[19]

---

[12] *Id*.
[13] R. at 86. Pernic sent the check on April 12, 2012, a month before her termination.
[14] R. at 41. Mr. Murphy believed the fee could not have been more than $1,000, alleging Pernic cost the firm $2,000.
[15] R. at 45.
[16] R. at 49. Testimony from the Personnel Manager and another legal assistant corroborated this unwritten firm policy. See R. at 51, 56.
[17] R. at 48–49

> Mr. Murphy: And we, of course, have quite a bit of additional information—
> The Referee: Yes, I won't be hearing that today.

   R. at 51

> Mr. Murphy: Now I could ask, of course, Mrs. Ferguson about the other things that were happening at the same time. You've precluded us from doing that—
> The Referee: Yes.

[18] R. at 75. Decided on August 27, 2012.
[19] R. at 88. From Murphy & Landon's letter of appeal: "Those 'multiple incidents and issues' would each independently constitute just cause for the claimant's discharge."

## A. The Board Hearing

A hearing before the Board occurred on February 6, 2013. Pernic did not attend, presumably due to training required for a new job.[20] The Board instructed the Firm to "focus today on new matters, new evidence and any aspects of the referee's decision with which you disagree."[21] Murphy and a Firm employee not present at the Appeals hearing testified regarding Pernic's lateness, rudeness, and other misconduct alleged in her termination letter. Murphy stated that, although he had met with Pernic about her poor performance a few months prior to her termination, no written record of this meeting exists.[22]

## B. The Board's Decision

On March 11, 2013, the Board affirmed the Referee's decision, finding the Firm lacked good cause for the dismissal, and confirmed Pernic's entitlement to benefits.[23] The Board affirmed the Referee's determination that Pernic's violation of the Firm's unwritten policy was insufficient to find willful and wanton conduct amounting to a finding of just cause for dismissal.[24] Further, the Board found that, although it is "clear" Pernic was warned at one point that deficiencies in her performance may lead to dismissal, the warning focused on lateness, long lunches, and refusal to work extra hours. The Board concluded that the Firm fired Pernic for the unauthorized payment of an invoice, and therefore an impermissible "disconnect between the warning and discharge" existed.[25] Additionally, the Board stated that Pernic might have been given a "mixed message," rather than a "zero tolerance message," given the Firm's prior tolerance of Pernic's "substandard and noncompliant" conduct, due to the family connection

---

[20] R. at 108, 136. Pernic requested an earlier meeting be postponed due to her new job; however, she failed to show up at this newly set date.
[21] R. at 108.
[22] R. at 120.
[23] R. at 132.
[24] R. at 131.
[25] *Id*.

within the Firm.[26] This potential mixed message required the Firm, in the Board's view, to "articulate clearly the point at which such performance would no longer be tolerated."[27]

## III. STANDARD OF REVIEW

The standard of review under which this Court reviews the Board's decision is deferential, and the Board's decision will only be modified in extreme circumstances. The Board's decision must be affirmed so long as it is (1) supported by substantial evidence and (2) free from legal error.[28] A finding of substantial evidence requires such relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[29] While a preponderance of evidence is not necessary, substantial evidence means "more than a mere scintilla."[30] Because the Court does not weigh evidence, determine questions of credibility, or make its own factual findings, it must uphold the decision of the Board unless the Board "acts arbitrarily or capriciously" or its decision "exceeds the bounds of reason."[31]

## IV. DISCUSSION

### A. The Parties' Contentions

On appeal, the Firm asserts multiple reasons why the Board's decision should be reversed, or alternatively remanded to the Board.[32] First, the Firm asserts that they were denied due process and a reasonable opportunity for a fair hearing in violation of 19 *Del. C.* 3318(c), because the Appeals Referee only permitted evidence of a single ground for Pernic's dismissal at

---

[26] *Id.*

[27] *Id.*

[28] *Unemployment Ins. Appeal Bd. of Dept. of Labor v. Duncan*, 337 A.2d 308, 309 (Del. 1975).

[29] *Oceanport Ind. v. Wilmington Stevedores*, 636 A.2d 892, 899 (Del. Super. Ct. 1994) (citing *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951).

[30] *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988); *Universal*, 340 U.S. at 477 ("Accordingly, it must do more than create a suspicion of the existence of the fact to be established. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal of a directed verdict when the conclusion sought to be drawn is one of fact for the jury.").

[31] *PAL of Wilmington v. Graham*, 2008 WL 2582986, at *4 (Del. Super. Ct. June 18, 2008).

[32] Murphy & Landon's Opening Br., at 6 (June 5, 2013).

the hearing before the Appeals Referee.[33] The Firm further contends that it was denied a fair hearing because the Board committed legal error when it made its final determination without "full evidence in the record," and made a decision that was "not the product of an orderly and logical deductive process."[34] Third, the Firm asserts that the Board erred as a matter of law when it did not consider whether a specific warning that Pernic's conduct would result in termination was necessary under the circumstances.[35] Finally, the Firm contends that the Board should have granted their appeal because Pernic did not attend the hearing before the Board and therefore did not "oppose the appeal."[36] According to the Firm, Pernic's failure to attend indicates her lack of opposition, rendering the issue moot.[37]

Pernic maintains that the Board's decision should be upheld.[38] She denies the Firm's allegations regarding her work performance, claiming the statements from Murphy and his paid employees are defamatory opinions, not facts, and are not supported by any evidence.[39] Pernic addresses her absence from the hearing before the Board, presumably contending that just because she did not attend the hearing does not mean she no longer opposes the Firm's claims.[40]

In separate correspondence, James Wakley, Deputy Attorney General representing the Board, wrote that the Board "cannot and will not" address the Firm's challenges to the Board's rulings on the merits, given that "a body acting in a judicial or quasi-judicial capacity has no cognizable interest in seeking to have its rulings sustained."[41] Mr. Wakley's letter, however, did address the Firm's fourth assertion, regarding the Firm's request for default judgment. Mr.

---

[33] *Id*.
[34] *Id*.
[35] *Id*.
[36] Murphy & Landon's Opening Br., at 6 (June 5, 2013).
[37] *Id*.
[38] Pernic's Answering Br., at 1 (July 17, 2013).
[39] *Id*.
[40] *Id*.
[41] UIAB response to Appellant's Opening Br. (June 25, 2013), citing *Wilmington Trust Co., v. Barron*, 470 A.2d 257, 261 (Del. 1983).

Wakley explained that the Firm failed to provide legal support for its default judgment argument, and neither party was required to attend the hearing.[42] Mr. Wakley added that the Firm's mootness argument also is without merit because Pernic never made an affirmative statement withdrawing her request for benefits, and the Board could not assume such a desire simply because Pernic failed to attend the hearing.[43]

## B. The Board's Decision Was Based on Substantial Evidence and Free from Legal Error.

### 1. The Board's Decision Complies with 19 *Del. C.* 3318(c)

The Firm argues that pursuant to 19 *Del. C.* § 3318(c)[44] it was entitled to a fair hearing, but was denied that right when evidence of Pernic's alleged prior misconduct was excluded.[45] The Firm disputes that Pernic was terminated exclusively for violating firm policy, and argues that Pernic was terminated for her cumulative misconduct.[46] Additionally, the Firm argues that if it had been allowed to present evidence of the factors leading to her termination, it would have established that Pernic was fired for just cause.[47]

The Board considers the factual findings of the Appeals Referee when deciding whether to affirm or reverse the award of benefits, and the parties are provided with the opportunity to supplement their prior arguments with additional relevant evidence and new legal arguments.[48] It is undisputed that although the Appeals Referee limited testimony to what he believed was the final action leading to termination, at the hearing before the Board, the Firm was given the opportunity to present additional evidence regarding the reason or reasons for Pernic's discharge, which the Board then considered in rendering its decision.

---

[42] *Id*, (citing 19 *Del. C.* § 3320); 19 *De. Admin. C.* § 1201-4.2.
[43] *Id*. at 2.
[44] Section 3318(c) states, in pertinent part: Unless the appeal is withdrawn, an appeals tribunal, after affording the parties reasonable opportunity for fair hearing, shall affirm, modify or reverse the decision of the deputy. . . .
[45] *Id*.
[46] Murphy & Landon's Opening Br., at 6 (June 5, 2013).
[47] *Id*.
[48] *Carousel Studio v. Unemployment Ins. Appeal Bd.*, 1990 WL 91108, at *1–*3 (Del. Super. Ct. June 26, 1990).

## 2. The Board's Decision Was the Product of an Orderly and Logical Deductive Process

This Court's role is to correct errors of law and to review the factual findings below to determine if such findings are sufficiently supported by the record and are the product of an orderly and logical deductive process.[49] The evidence, as presented to the Board, established that Pernic was previously counseled regarding her alleged prior misconduct. However, there was a disconnect between the warning for other performance issues[50] and the cause of her firing – the unauthorized payment of an invoice. As the Board indicated in its Order, ". . . [Pernic] may have been given a 'mixed message,' due to the care taken as a result of the family relationship."[51] "[Murphy] tolerated conduct deemed to be substandard and noncompliant, creating a duty to articulate clearly the point at which such performance would no longer be tolerated."[52]

The Board considered evidence of the nature of all of the job performance deficiencies alleged by the Firm, the counseling for those deficiencies provided by the Firm, the nature of the proximate cause for Pernic's termination as well as Pernic's testimony before the Appeals Referee in concluding that there was not just cause for her discharge. Based on the above, the Court finds that the Board's decision to affirm the decision of the Appeals Referee was based on substantial evidence and the product of an orderly and logical deductive process.

---

[49] *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del.1972).
[50] *See* R. at 131( ". . . [Pernic] was warned about lateness, long lunches, refusal to work extra hours, and other performance issues.").
[51] *Id.*
[52] *Id.*

**3.    The Board Did Not Err as a Matter of Law when It Did Not Consider Whether a Specific Warning that Pernic's Conduct Would Result in Termination was Necessary Under the Circumstances**

Under Delaware law, a former employee is disqualified from receiving unemployment benefits if the individual was discharged "for just cause in connection with the individual's work."[53]   The Firm has the burden of establishing "just cause" by a preponderance of the evidence.[54]   "Just cause" is defined as a "willful or wanton act or pattern of conduct in violation of the employer's interest, the employee's duties, or the employee's expected standard of conduct."[55]   Conduct that is willful and wanton is "evidenced by either conscious action, or reckless indifference leading to a deviation from established and acceptable workplace performance."[56]   While a single instance of misconduct may constitute just cause, the employer must first have warned the employee of the consequences of the specific action, and must not have tolerated similar actions in the past.[57]   In many cases, especially when inadequate performance has been tolerated in the past, a clear, unequivocal warning that an employee's specific behavior will lead to termination is required.[58]

The Firm relies on *Optima Cleaning v. UIAB* to support its contention that Pernic did not require a clear, unequivocal warning that her conduct could lead to termination.   The Firm contends that Pernic may have been on notice that "insubordination," such as violating the

---

[53] 19 *Del. C.* § 3314(2)

[54] *McGee v. Amazon.com*, 2013 WL 656243, at *3 (Del. Super. Ct. Jan. 31, 2013).

[55] *Majaya v. Soujourner's Place and Unemployment Ins. Appeal Bd.*, 2003 WL 21350542, at *4 (Del. Super. Ct. June 6, 2003).

[56] *MRPC Financial Management LLC v. Carter*, 2003 WL 21517977, at *4 (Del. Super. Ct. June 20, 2003).

[57] *UIAB v. Martin,* 431 A.2d 1265, 1268 (Del. 1981).

[58] *See Finestrauss v. Phillips*, 2002 WL 382858, at *1, *3 (Del. Super. Ct. Jan. 8, 2002) (holding that termination of a paralegal who had not been given an unequivocal warning was without just cause, stating that unless the conduct is of such a nature that no such warning is necessary, such as with blatant insubordination, an unequivocal warning is necessary); *see also Ortiz v. UIAB*, 317 A.2d 100, 101 (Del. 1974) (holding that "fundamental fairness" requires a clear, "unambiguous" warning that an employee, whose lateness had been previously tolerated, would be discharged if his poor attendance record continued); *but see Optima Cleaning Sys. Inc. v. UIAB*, 2010 WL 5307981, at *4 (Del. Super. Ct. Dec. 7, 2010) (holding that the Board erred in failing to consider whether the requirement of an unequivocal warning unnecessary for an employee who had been repeatedly cited for misconduct, potentially putting him on notice that carelessness, in general, could lead to his termination.).

Firm's financial policy, could result in the termination of her employment.[59]   In *Optima*, a Building Supervisor was terminated for what the Appeals Referee and Board determined was a "key incident," even though his employer argued the termination resulted from cumulative misconduct.[60]   The Court held that while the weight that the Board gave to the evidence was "within the province of the Board,"[61] the Board erred in failing to consider whether the employee was "on notice" that misconduct could lead to his termination, given repeated written citations for misconduct over four years.[62]   Similarly, in *Potts Welding & Boiler Repair Co. v. Irvine*, the Court held that an unequivocal warning was unnecessary, given that while the employer tolerated limited personal usage of a WATS line, the employee in this case exhibited unlimited and unrestrained use which was clearly excessive and never contemplated as acceptable use.[63]

In contrast, in *Ortiz v. UIAB*[64] and *Weaver v. Employment Security Commission*[65] the Courts held that fundamental fairness requires that an employee receive a single, unambiguous warning that certain conduct is unacceptable, and that this specific conduct will lead to his or her discharge.  As the Court has pointed out in other cases, these required warnings are very fact specific.[66]   In *Ortiz*, although the employer had previously condoned lateness while the employee was caring for a sick relative, the employee was terminated without being told that his lateness would no longer be tolerated.[67]   The Court determined that, because the employee's poor conduct was previously tolerated, the employer was required to provide an unambiguous

---

[59] *Optima*, 2010 WL 5307981 at *4.
[60] *Id*. at *3.
[61] *Id*.  This holding undercuts the Firm's contention that the Board erred in failing to determine that cumulative misconduct led to Pernic's discharge.  As previously stated, this Court does not "weigh evidence, determine questions of credibility, or make its own factual findings."  Therefore, given our deference to the Board's factual determinations in weighing evidence, the Firm was given a fair hearing in front of the Board.
[62] *Id*.
[63] 1988 WL 22356, at *4–5 (Del. Super. Ct. Feb. 29, 1988).
[64] 317 A.2d 100 (Del. 1974).
[65] 274 A.2d 446 (Del. Super. Ct. 1971).
[66] *Id*. ("The Court was quite clear in limiting its holding to the specific factual situation which *Ortiz* presented.")
[67] 317 A.2d 100.

warning, indicating further specified misconduct would lead to termination. In *Weaver*, the Court held that although there was significant evidence of the employee's substandard attendance record, in the absence of any evidence showing that the employee was warned that his lateness would lead to termination, just cause for termination did not exist.[68]

The opinions relied on by the Firm that distinguish *Ortiz* and *Weaver* note that the Court in *Ortiz* stated that the circumstances in that case were "exceptional" and that not all cases require a warning.[69] According to the Board's factual determinations, Pernic was fired for violating the Firm's financial policy. The Board also found that the violation of the policy was not egregious enough to forego a notice requirement. The Board concluded that Pernic was warned about her misconduct, but not specifically warned about the consequences of violating the policy. As the Court in *Optima* held, it is not for this Court to reevaluate how the Board weighed the evidence before it.[70]

In the alternative, the Firm seeks a remand for the Board to consider the adequacy of the warning Pernic received. The Board already weighed the sufficiency of the warning and found it deficient. It is unnecessary, therefore, to remand this case to the Board to determine whether there was a correlation between insubordinate acts and the warning given, as the Board has already determined that no correlation exists.

The Court has some sympathy for the position in which the Firm found itself with Pernic. However, that sympathy is tempered by the fact that the Firm did not have a written policy regarding payment of invoices, nor did it memorialize the results of the warning it provided to

---

[68] *See also Martin v. Delaware Supermarkets, Inc.*, 2012 WL 2700460, at *4 (Del. Super. Ct. July 5, 2012) ("Where an employer previously accommodated or tolerated certain conduct, 'fundamental fairness require[s] an unambiguous warning' to the employee that future like conduct will result in termination. Without such a warning there is no just cause.").

[69] *Optima*, 2010 WL 5307981; *Potts Welding*, 1988 WL 22356, at *3.

[70] 2010 WL 5307981 at *3.

Pernic concerning the consequences of future performance deficiencies. Perhaps if it had done these things, the Firm might have fared better before the Board.

**4.      Pernic's Failure to Attend the Hearing before the Board Did Not Render Her Appeal as "Unopposed"**

Under 19 *Del. Admin. C.* § 1201-4.2, the Board is given discretion to hear an appeal in the absence of a delinquent party who fails to appear for noticed hearings within ten minutes of the time indicated on the Hearing Notice.[71]  It is clear from the Record that the Board elected to proceed in Pernic's absence.  The Court is satisfied that the Board acted within its discretion and was not required to dismiss her appeal, nor did her failure to appear render her claim moot.

## V. CONCLUSION

The Court finds that the Board's ruling was based on substantial evidence, from which a reasonable person could conclude that Pernic was not fired for just cause.  Because there is substantial evidence and no error of law, the decision of the Board is **AFFIRMED**.

**IT IS SO ORDERED.**


**_____**
**/s/**Ferris W. Wharton, Judge

---

[71] 19 *Del. Admin. C.* § 1201-4.2 states:  Presence of parties required. All parties to the appeal shall be present at the Board's hearing. Failure to appear within 10 minutes of the time indicated on the Notice *may result* in the Board hearing the appeal in absence of the delinquent party or, if the delinquent party is the appellant, dismissal of the appeal. (emphasis added).